Lynn E. ANWEILER, Plaintiff–Appellant,

v.

AMERICAN ELECTRIC POWER SERVICE CORPORATION and Aetna Life Insurance Company, Defendants–Appellees.

No. 92–2560.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 10, 1992.

Decided June 3, 1993.

Amended Aug. 25, 1993 *.

* Plaintiff filed a petition for rehearing and suggestion for rehearing en banc after the original opinion of June 3, 1993, and the Secretary of Labor submitted an *amicus curiae* brief in support of plaintiff's petition. The opinion issued June 3, 1993, is withdrawn, and the present amended opinion substituted. The petition for rehearing with suggestion for rehearing en banc filed by plaintiff is dismissed as moot.

Vincent J. Heiny (argued), Haller & Colvin, Fort Wayne, IN, for Lynn E. Anweiler.

Steven L. Jackson (argued), Michael J. Nader, Baker & Daniels, Fort Wayne, IN, for American Elec. Power Service Corp. and Aetna Life Ins. Co.

Before COFFEY and MANION, Circuit Judges, and WOOD, JR., Senior Circuit Judge.

HARLINGTON WOOD, JR., Senior Circuit Judge.

Larry Anweiler, plaintiff's husband, developed Hodgkin's disease and received disability benefits from his employer Indiana & Michigan Electric Company ("I & M") from October 1980 until April 1989. Mr. Anweiler also received social security disability benefits for most of this time. In 1981, Mr. Anweiler signed a reimbursement agreement at I & M's request which designated Aetna Life Insurance Company the beneficiary of his $37,000 group life insurance policy for any overpayment of benefits which were owed at his death. When Mr. Anweiler died in 1989, the proceeds from his life insurance policy went to Aetna because of the double payment of disability benefits by Aetna and the Social Security Administration. I & M's disability plan allows for benefits owed under its plan to be reduced by any social security benefits the plan participant receives. When Mr. Anweiler died, he had been overpaid $46,227.01 by Aetna, who administered the disability plan, due to his receipt of social security disability benefits in addition to his long-term disability benefits from work.

In this action under the Employee Retirement Income Security Act of 1974 ("ERISA" or "the Act"), 29 U.S.C. § 1001 et seq., plaintiff Lynn Anweiler, widow of Larry Anweiler, alleges defendants American Electric Power Service Corporation ("AEPSC") and Aetna breached their fiduciary duties when her husband Larry Anweiler was requested to sign the reimbursement agreement in 1981. Plaintiff further argues the reimbursement agreement lacks consideration, though she does not dispute her husband was overpaid by Aetna. She seeks penalties against defendants for their failure to provide specific reasons and a full and fair review of Aetna's denial of her claim for the insurance proceeds and requested documents as well as attorney fees.

All parties moved for summary judgment. The district court granted defendants' joint motion and denied plaintiff's in a final judgment on June 1, 1992. For the reasons given below, we affirm the grant of summary judgment for defendants.

## I. FACTS

Larry Anweiler worked for I & M from 1969 until Hodgkin's disease disabled him and prevented him from working in June 1980. His last position was a substation mechanic. I & M and defendant AEPSC are wholly-owned subsidiaries of American Electric Power Corporation ("AEP"). AEPSC is the administrator and a fiduciary of the long-term disability and group life insurance employee welfare plans for AEP and I & M employees, including Mr. Anweiler. Aetna insured the plan, which we will call the AEP disability plan, that paid Mr. Anweiler's long-term disability benefits and life insurance.

After using his vacation and sick time, Mr. Anweiler was entitled to $799.07 a month in long-term disability benefits as of October 4, 1980, under his AEP disability plan. Mr. Anweiler also applied for disability benefits under the Social Security Act, and in April 1981 he was awarded those benefits retroactively from December 1980. Mr. Anweiler informed Aetna of the award in April 1981. Under the AEP disability plan, Mr. Anweiler was entitled to $799.07 a month, which would be paid by Aetna minus any other income benefits Mr. Anweiler or his family received. Thus, because of the overpayment caused by his receipt of double benefits, he owed Aetna $2,555.16. This amount was to be recouped by reducing his benefits from the AEP disability plan. But in early 1982, the Social Security Administration reversed its decision

to award benefits to Mr. Anweiler. Consequently, Aetna began paying Mr. Anweiler the full long-term benefits available under the plan. Mr. Anweiler, however, appealed the Social Security Administration's decision and won. His social security disability benefits were reinstated retroactively from February 1982. Until 1988, Mr. Anweiler received disability benefits from the Social Security Administration and Aetna. Mr. Anweiler, his wife, and four children used the money for food, clothing, housing, and general living costs.

In May 1988, Mr. Anweiler informed I & M that he had been receiving social security benefits since 1982. Plaintiff claims her husband notified someone at Aetna of the social security benefits some years prior to 1988. Aetna denies it was informed of the double benefits before May 1988. By May 1988, because of the double benefits, Aetna had overpaid Mr. Anweiler $47,588.69. Aetna then began reducing his long-term disability benefits to recover the overpayment. When Mr. Anweiler died on April 9, 1989, Aetna was still owed $46,227.01.

In August 1981, I & M requested Mr. Anweiler to sign a reimbursement agreement which made Aetna a beneficiary under his group life insurance policy issued by Aetna to the extent of any overpayment existing at his death. When Mr. Anweiler died in 1989, therefore, Aetna was paid the $37,000 from Mr. Anweiler's life insurance policy. The reimbursement agreement states in relevant part:

> I am familiar with and understand the provisions of group policy ... by [Aetna] ... to the effect that the amount of any benefits payable for any month ... shall be reduced by the amount of any benefits I receive or am entitled to receive under the United States Social Security Act as well as certain other income sources as enumerated in said group policy.
>
> .    .    .    .    .
>
> I request Aetna to postpone making any reduction in the amount of my group policy benefits until such time as I begin to receive Social Security or other applicable income benefits. I agree to notify Aetna promptly as soon as I am awarded Social Security or other applicable income benefits and to refund to Aetna any amount it may pay me under said group policy.... In consideration of Aetna granting my request, I hereby assign, transfer and set over to Aetna, to the extent of any excess so paid under this Agreement, all rights, benefits and advantages to be had from ... any insurance policy benefits hereafter becoming payable to me ... [and] designate Aetna as creditor beneficiary under any group life policy issued by Aetna ... to the extent of the amount of any overpayment which may exist at the time of my death.

The $37,000 life insurance policy would have been payable to plaintiff as Mr. Anweiler's previously designated beneficiary but for the reimbursement agreement. When Mr. Anweiler signed the agreement, he was not informed that he did not have to sign the agreement in order to receive his long-term disability benefits, nor was he informed that it was revocable at will like his prior beneficiary designation. Aetna states that it routinely asks plan participants for agreements of this type.

When plaintiff filed a death claim for the proceeds from her husband's life insurance policy, she was informed the $37,000 had been paid to Aetna for the overpayment of long-term disability benefits pursuant to the reimbursement agreement. Several times plaintiff requested further explanation and review of the denial of her claim as well as a copy of the master insurance plan. After Aetna's repeated denial of her claim, she filed her suit against Aetna and AEPSC on April 4, 1991. Aetna has not sought to recover the approximately $9,000 remaining from its overpayment of benefits to Mr. Anweiler.

## II.  ANALYSIS

■ ERISA is a comprehensive statute designed to protect the interests of employees and their beneficiaries in pension and

welfare benefit plans.[1] *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). ERISA mandates standards of conduct, responsibility, and obligations for fiduciaries of employee benefit plans and provides appropriate remedies, sanctions, and access to federal court. 29 U.S.C. § 1001(b). ERISA establishes duties of loyalty and care for fiduciaries as well as the obligation to act solely in the interest of the benefit plan and its participants and beneficiaries. *Id.* §§ 1104, 1106. Section 1109 of the Act establishes liability for any breach of this fiduciary duty.[2]

Civil actions for ERISA violations are found in section 1132 of the Act. There are "six carefully integrated civil enforcement provisions" in this section demonstrating the evident care with which ERISA was crafted. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146–47, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985). In *Russell*, the Supreme Court held that recovery for breaches of fiduciary duty should go to the plan unlike actions for recovery of benefits due a participant or beneficiary which go to the individual. *Id.; accord Harsch v. Eisenberg*, 956 F.2d 651, 657 (7th Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992).

Plaintiff's claim centers upon defendants' alleged breach of their fiduciary duties when her husband was requested to sign a reimbursement agreement making Aetna the beneficiary of his life insurance if there was any overpayment of long-term disability benefits still owing at his death. Plaintiff alleges this "request," the veiled implication is that Mr. Anweiler was led to believe he must sign the agreement in order to receive his benefits, was a breach of defendants' fiduciary duties because Mr. Anweiler was not told the agreement was revocable at any time, nor required for receipt of his benefits, and nor was it in his interest. Plaintiff further claims the agreement, a contract, lacks consideration. After her claim on the insurance policy was

denied, plaintiff believes she was not given a full and fair review and explanation of the denial. She also claims requested documents were not provided to her in a timely fashion as ERISA requires. *See* 29 U.S.C. § 1132(c).

### A. *Standard of Review*

We review the district court's grant of summary judgment for defendants de novo. *Becker v. Tenenbaum–Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir.1990). We review the record and controlling law under the same standard as the district court. *Soo Line R.R. Co. v. Overton*, 992 F.2d 640, 643 (7th Cir.1993). We can uphold the entry of summary judgment only if the moving party is entitled to judgment as a matter of law, and there is no genuine issue of material fact. *Appley v. West*, 929 F.2d 1176, 1179 (7th Cir.1991).

Summary judgment is made upon the pleadings, depositions, affidavits, admissions, and answers to interrogatories. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party initially shows the court that there is an absence of a question of fact, the nonmoving party has the burden of establishing that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A fact is material only if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

The district court's ruling that plaintiff is not entitled to either attorney fees or statutory penalties under ERISA is reviewed under an abuse of discretion standard. *See* 29 U.S.C. § 1132(c) & (g); *Ziaee v. Vest*, 916 F.2d 1204, 1210 (7th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 1581, 113

---

**1.** A life insurance policy like Mr. Anweiler's is a welfare benefit plan within ERISA's defined terms. 29 U.S.C. § 1002(1).

**2.** Section 1109 provides in part: "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan." 29 U.S.C. § 1109(a).

L.Ed.2d 646 (1991); *Nichol v. Pullman Standard, Inc.,* 889 F.2d 115, 120 (7th Cir.1989).

### B. *The Reimbursement Agreement*

■ The district court found the reimbursement agreement was not supported by consideration. The court reasoned the defendants had no right to reduce Mr. Anweiler's disability benefits prior to his actual receipt of any social security benefits under the AEP disability plan. Thus when Aetna promised in the agreement to "postpone making any reduction in the amount of" disability benefits until Mr. Anweiler actually received any social security benefits, it was not promising anything at all. Therefore, Mr. Anweiler's designation of Aetna as the beneficiary of his life insurance policy pursuant to the agreement was not supported by consideration.

The AEP disability plan states: "The amount of monthly income benefit payable under this policy for a given monthly period of total disability shall be 50% of the employee's monthly rate of basic earnings if no other income benefits are payable for the given monthly period." If other income benefits are payable, the 50% owed under the plan shall be reduced by that amount. Disability benefits received under the Social Security Act are considered income benefits. The question is whether benefits which "are payable" include those benefits which the employee is entitled to although he or she has not yet filed for them, or whether benefits "are payable" only when actually received. Aetna claims it had the right to reduce Mr. Anweiler's benefits by the estimated amount he would have been entitled to as social security benefits. The most humane thing to do, Aetna claims, however, is to pay the full 50% benefits under its plan and later seek reimbursement or an offset because of any other benefits later received.

Other courts examining similar disability plans have found the insurance companies did have the right to offset benefits by the amount of social security benefits which the insured was entitled to, although maybe not actually receiving. In all cases, however, the plans' language specified reductions would be made for social security benefits received or

those which the insured is entitled to receive. *Stuart v. Metropolitan Life Ins. Co.,* 664 F.Supp. 619 (D.Me.1987); *Barklage v. Metropolitan Life Ins. Co.,* 614 F.Supp. 51 (W.D.Mont.1985); *O'Connell v. Prudential Ins. Co.,* No. 82–3078, 1984 U.S.Dist.LEXIS (D.Mass. Nov. 15, 1984).

While the AEP disability plan does not state that benefits will be offset by other benefits which the insured is eligible for, the words "are payable" may indicate just that. An affidavit from an account specialist at Aetna states: "an individual's monthly benefit under the [disability plan] shall be reduced as a result of his receipt of or entitlement to other sources of income, including social security benefits." We, therefore, disagree with the district court's conclusion and find the agreement was supported by consideration.

### C. *Breach of Fiduciary Duty*

■ Plaintiff contends defendants materially misled Mr. Anweiler in violation of their fiduciary duties when he signed the reimbursement agreement at their request. The district court agreed and found it was a breach of their fiduciary duties to not tell Mr. Anweiler the agreement was revocable at will, and he was not required to sign it.

■ Fiduciaries breach their duties of loyalty and care if they mislead plan participants or misrepresent the terms or administration of a plan. *Berlin v. Michigan Bell Tel. Co.,* 858 F.2d 1154, 1163 (6th Cir.1988) (listing cases). Fiduciaries must also communicate material facts affecting the interests of beneficiaries. *Rosen v. Hotel & Restaurants Employees & Bartenders Union,* 637 F.2d 592, 599–600 (3d Cir.), *cert. denied,* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981). This duty exists when a beneficiary asks fiduciaries for information, and even when he or she does not. *Eddy v. Colonial Life Ins. Co.,* 919 F.2d 747, 750 (D.C.Cir. 1990).

Accordingly, we agree with the district court that defendants breached their fiduciary duties by not giving Mr. Anweiler full and complete material information concerning the reimbursement agreement when he was

asked to sign it. Reimbursements pursuant to agreements like Aetna's have previously been upheld. *See Stuart,* 664 F.Supp. at 619; *Poisson v. Allstate Life Ins. Co.,* 640 F.Supp. 147 (D.Me.1986) (relying on plan alone and applying New York law); *Barklage,* 614 F.Supp. at 51; *O'Connell,* No. 82–3078; *Henning v. Metropolitan Life Ins. Co.,* 546 F.Supp. 442 (M.D.Pa.1982). But Mr. Anweiler was not informed of material facts concerning this agreement in violation of the protection provided by ERISA and its fiduciary duty requirement. Furthermore, Aetna may have manipulated its position as insurer of the disability plan and life insurance policy to its own benefit rather than Mr. Anweiler's when it provided for reimbursement of one policy by way of another.[3] Of course, it is Aetna who is short approximately $9,000 because of its overpayment rather than plaintiff who claims to be short $37,000.

### D. *Recovery for Breach of Fiduciary Duty*

■ ERISA allows for an action to enforce and seek appropriate relief because of a breach of fiduciary duty. 29 U.S.C. § 1132(a)(2). Section 1109 of ERISA makes "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" personally liable. *Id.* § 1109(a).

The Supreme Court held in *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), that any recovery for a violation of section 1109 goes to the plan and not a beneficiary. *Id.* at 140, 105 S.Ct. at 3089. The Court relied upon the language in section 1109 and Congress's evident concern for mismanagement of plan assets to hold the recovery must be to the plan itself. Other courts have also recognized that any recovery from an action for breach of fiduciary duty goes to the plan as a whole and not an individual beneficiary. *Simmons v. Southern Bell Tel. & Tel. Co.,* 940 F.2d 614, 617 (11th Cir.1991); *Hozier v. Midwest Fasteners Inc.,* 908 F.2d 1155, 1162 & n. 7 (3d Cir.1990); *Bryant v. International Fruit*

*Product Co.,* 886 F.2d 132, 135 (6th Cir.1989); *Sommers Drug Stores Co. v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1463 (5th Cir. 1986), *cert. denied,* 479 U.S. 1034 & 1089, 107 S.Ct. 884 & 1298, 93 L.Ed.2d 837 (1987). In *Harsch v. Eisenberg,* 956 F.2d 651 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992), we approved of the Ninth Circuit's reasoning in *Sokol v. Bernstein,* 803 F.2d 532, 535 (9th Cir.1987), which stated liability for a breach of fiduciary duty runs to the plan and not beneficiaries as individuals. *Harsch,* 956 F.2d at 657.

Plaintiff claims ERISA allows her to individually recover from defendants for their breach of fiduciary duties. She relies upon several ERISA sections without clearly stating which particular section allows her to personally recover. An action to recover from a breach of fiduciary duty occurred is distinct from an action to recover plan benefits under section 1132(a)(1)(B) of the Act. In *McMahon v. McDowell,* 794 F.2d 100 (3d Cir.), *cert. denied,* 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986), the Third Circuit held that when a plaintiff's ERISA claim is based upon a breach of fiduciary duty, the plaintiff must bring the action under section 1132(a)(2) and not section 1132(a)(1)(B). *Id.* at 109. Similarly, Lynn Anweiler cannot attempt to restyle her action as a personal claim for benefits when she has continually alleged a breach of fiduciary duty claim.

Plaintiff focusses her claim on section 1132(a)(3) of the Act in her petition for rehearing and argues she may personally recover from defendants' breach of their fiduciary duties under this section although she may not recover under section 1132(a)(2). Section 1132(a)(3) allows a beneficiary to bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or ... to obtain the appropriate equitable relief ... to redress such violations." 29 U.S.C. § 1132(a)(3). A fiduciary's breach of his or her fiduciary duties violates provisions of subchapter I of ERISA. *See id.* § 1104. This panel, in agreement with the district court, previously held that section 1132(a)(3)

---

**3.** There is a note from one I & M employee to her supervisor after Mr. Anweiler signed the agreement reading: "Do you believe this? All he said was 'OH.' !!!" [sic].

did not allow plaintiff any individualized relief. The recent Supreme Court case *Mertens v. Hewitt Assocs.*, — U.S. —, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), however, sheds some important light on the issue.

■ In *Mertens*, the Court held that the "appropriate equitable relief" in section 1132(a)(3) included only typical remedies available in equity and not "legal remedies" like compensatory damages or monetary relief. *Mertens*, — U.S. at —, 113 S.Ct. at 2069. The Court limited its holding to the "narrow battleground" chosen by the parties and decided the issue of "what forms of relief are available" under section 1132(a)(3), not to whom the relief can go or whether a remedial wrong had even been alleged. *Id.* — U.S. at —, 113 S.Ct. at 2067–68. Nevertheless, *Mertens* clearly indicates the importance and availability of equitable relief. Moreover, the Secretary of Labor in an *amicus curiae* brief argues *Mertens* dictates the availability of equitable relief to an individual under section 1132(a)(3) for a fiduciary's breach of duty. Therefore, in light of *Mertens* and in deference to the Secretary's interpretation of the law which he is authorized to enforce, we hold that an individual may seek equitable relief from a breach of fiduciary duty under section 1132(a)(3).[4] Equitable relief running to an individual falls within the scope of both 1132(a)(3)'s language and ERISA's broad remedial purpose. *See* 29 U.S.C. § 1001(b).

■ Plaintiff seeks a constructive trust on the insurance policy proceeds as equitable relief under section 1132(a)(3) which is a typical remedy available in equity. But it is an equitable maxim that a party coming before a court in equity must come with clean hands. *International Union v. Local Union No. 589*, 693 F.2d 666, 672 (7th Cir.1982). Although the district court did not consider whether plaintiff was entitled to equitable relief because it held she could not recover under section 1132(a)(3) as a matter of law, it is not necessary to remand the case when the record so clearly shows that plaintiff is not entitled to any equitable relief. Plaintiff's husband received double benefits

from February 1982 until 1988 when Aetna finally learned Mr. Anweiler was also receiving social security disability benefits. It is obvious from plaintiff's own arguments that she knew at the time that her husband should not receive double benefits since she maintains her husband contacted Aetna earlier than 1988. Additionally, as explained above, in 1981 when he was first awarded social security disability benefits, his AEP disability plan benefits were reduced because of the social security benefits. When Mr. Anweiler died in 1989, he still owed Aetna $46,227.01. Even with the $37,000 life insurance policy, Aetna is still short $9,000 because of the overpayment. Plaintiff cannot escape these facts and is not entitled to any equitable relief.

Therefore, despite defendants' breach of their fiduciary duties, plaintiff has no equitable claim to the proceeds from Mr. Anweiler's life insurance policy.

### E. *Other Claims*

■ Plaintiff's various other claims do not merit a great deal of discussion. Even though plaintiff benefitted from the approximately $9,000 overpayment from Aetna as a member of the Anweiler household, she seeks additional money from defendants in the form of penalties under ERISA. Section 1133 of the Act requires every benefit plan to give specific reasons for any denial of benefits and a full and fair review of the decision denying the claim. 29 U.S.C. § 1133. Section 1132(c) allows a district court in its discretion to order penalties of up to $100 a day as relief if an administrator "fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary." *Id.* § 1132(c).

The district court in its discretion found AEPSC should not be liable for any penalties for an alleged failure to provide plaintiff with specific reasons and a full and fair review of

---

4. Judge Posner in *Lorenzen v. Employees Retirement Plan*, 896 F.2d 228, 230 (7th Cir.1990), recognized that both case law and the ERISA sections do not clearly indicate whether fiduciaries are liable to individuals but suggested section 1132(a)(3)(B) as a possible source.

the denial of her claim.[5] The court wisely found plaintiff had already benefitted from a $9,000 "windfall" of disability benefits improperly received. We agree. Plaintiff also asks for penalties because AEPSC failed to supply her with a master copy of the insurance policy as requested by her attorney. Though plaintiff failed to raise this claim in her complaint and only mentions it in her response to the defendants' motion for summary judgment and reply to defendants' response to her motion for summary judgment, we agree with the district court that plaintiff is not entitled to any penalties under section 1132(c) of the Act. As another exercise of its discretion, we find the district court also properly refused to award attorney fees to plaintiff under 29 U.S.C. § 1132(g).

■ We further reject plaintiff's other claims that the reimbursement agreement violated ERISA's anti-assignment provision in section 1056(d). *See Lumpkin v. Envirodyne Indus., Inc.,* 933 F.2d 449, 455–56 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991); *Nichol v. Pullman Standard, Inc.,* 889 F.2d 115, 119–21 (7th Cir.1989). Plaintiff's reliance upon various state insurance laws is also similarly misplaced.

## III. CONCLUSION

Plaintiff is not entitled to any equitable relief from defendants' breach of their fiduciary duties. We affirm the district court's grant of summary judgment for defendants.

AFFIRMED.

---

**5.** The district court correctly concluded that Aetna was not an administrator of the plan and not liable for penalties under 29 U.S.C. § 1132(c).

*See Moran v. Aetna Life Ins. Co.,* 872 F.2d 296, 299–300 (9th Cir.1989).