**Juan Diaz LOPEZ, Plaintiff,**

v.

**COMMONWEALTH OIL REFINING CO., INC., Connecticut General Life Insurance Co., et al., Defendants.**

**Civ. No. 91–1967 GG.**

United States District Court, D. Puerto Rico.

Sept. 2, 1993.

Juan Diaz Lopez, pro se.

Fiddler, Gonzalez & Rodriguez, Arturo Bauermeister, San Juan, PR, for defendants.

### OPINION AND ORDER

GIERBOLINI, Chief Judge.

### I. INTRODUCTION

Plaintiff is a disabled retired employee of co-defendant, Commonwealth Oil Refining Co. (CORCO). Plaintiff, proceeding in forma pauperis and pro-se, filed a complaint in which he alleges that he is a beneficiary of a long term disability insurance policy, held by his former employer CORCO and underwritten by co-defendant Connecticut General Life Insurance Company (CGLIC). Plaintiff alleges that defendants have violated both the Labor Management Relations Act (LMRA) and the Employee Retirement Income Security Act (ERISA) because the insurer has offset his disability benefits by the amount the plaintiff receives in Social Security in-

come. Plaintiff alleges that such an offset violates the terms of a Collective Bargaining Agreement (CBA) between CORCO and the Oil, Chemical and Atomic Workers International Union, South Puerto Rico Local No. 2 (Union) and the non-forfeiture provision of ERISA. Plaintiff also claims damages in the amount of $250,000.00 for economic and pecuniary loss, and for "great mental anguish." In our Opinion and Order of April 22, 1992, we decided that diversity of citizenship did not exist in this action. We converted defendants' motion to dismiss into a motion for summary judgment and ordered the parties to brief two issues: whether we have jurisdiction under the LMRA and ERISA. We also reserved judgment on whether ERISA bars compensatory damages and preempts actions for infliction of emotional distress. We address these issues in this Opinion and Order.

## II. BACKGROUND

CORCO and the Union entered into various CBAs which extended from 1967 to 1985. The last CBA expired on September 30, 1985 and there has been no CBA since that date between CORCO and the Union. All the CBAs contain an Income Protection provision. The Income Protection provision in the CBA in existence at the time the plaintiff became disabled reads as follows:

> The Company agrees to provide an insurance plan consistent with sound insurance practices protecting the income of totally disabled employees. The plan will provide a benefit (based on) 50% of the basic income of the employee after six (6) months of total disability and for continuous total disability up-to-the age of 65, subject to the limitations normally found in insurance coverage of this type.

Except for minor differences in wording, the Income Protection provisions in the other CBAs read similarly.

Pursuant to the Income Protection provision, CORCO sponsored a long term disability plan under an insurance policy underwritten by CGLIC. Under that policy, CGLIC approved plaintiff's claim for long term disability benefits, effective on November 10, 1979. The Schedule of Benefits under the insurance policy states that long term disability benefits will be provided to employees in an amount equal to:

> 50% of the Employee's monthly Basic Earnings rounded to the nearer $1.00, if not already an even multiple thereof, but in no event more than $300.

> \* \* \* \* \* \*

The amount of Monthly Income otherwise payable for any monthly period will be reduced by the amount of all Other Income Benefits (as defined in Section 9 of this policy) payable for the same monthly period.

It is provided, however, that if the sum of

> (1) the amount of Monthly Income otherwise payable for any monthly period, after giving effect to the adjustment provided under the preceding paragraph, and

> (2) all Other Income Benefits payable for the same monthly period

exceeds 70% of the Employee's monthly Basic Earnings, the amount of Monthly Income otherwise payable for the Employee will be further reduced so that the sum of the amount of Monthly Income payable and the amounts described under item (2) above equals 70% of the Employee's monthly Basic Earnings.

Section 9 of the policy defines Other Income Benefits to include:

> (1) any periodic cash payments provided on account of the Employee's disability:

> \* \* \* \* \* \*

> (b) by the Federal Social Security Act, including benefits payable to the Employee's dependents on account of the Employee's disability;

> \* \* \* \* \* \*

to the extent that such payments become payable on or after the commencement of the disability for which Monthly Income is payable; and

> (2) any Federal Old Age Benefits provided under the Federal Social Security Act.

Plaintiff now challenges as a violation of both the LMRA and ERISA the offsets made against his disability benefits for social secu-

rity income he receives. We find that no genuine issue of material fact exists in this action. The insurer legally offset plaintiff's social security income against his disability benefits. We therefore grant defendants' motion for summary judgment.

## III. LAW AND DISCUSSION

### A. LMRA CLAIM

■ "Summary judgment is appropriate if the factual materials submitted to the court establish that there is no genuine dispute as to material facts, and if the moving party is entitled to judgment as a matter of law." *Rodriguez–Abreu v. Chase Manhattan Bank, N.A.,* 986 F.2d 580, 583 (1st Cir.1993) (ERISA action); Fed.R.Civ.P. 56(c). After reviewing the CBA, we find that we lack jurisdiction under Section 301 of the LMRA because the claims in this action involve events occurring after the expiration of the CBA. Section 301 of the LMRA covers suits for the violation of contracts between an employer and a labor organization. 29 U.S.C. § 185. We have jurisdiction under section 301 if we find "(1) a claim for violations of (2) a contract (3) between an employer and a labor organization." *United Paperworkers Int'l Union v. International Paper Co.,* 920 F.2d 852, 859 (11th Cir.1991), *citing Carpenters Local Union No. 1846 of United Broth. of Carpenters and Joiners of America, AFL–CIO v. Pratt–Farnsworth, Inc.,* 690 F.2d 489, 500 (5th Cir.1982). But a federal court has jurisdiction over a suit for a violation of a CBA under Section 301 only while the agreement is in force; Section 301 has no application in the absence of a currently effective CBA. *United Auto., Aerospace and Agr. Implement Workers of America, Local 33 v. R.E. Dietz Co.,* 996 F.2d 592, 595, (2nd Cir.1993); *Johnson v. Pullman, Inc.,* 845 F.2d 911 (11th Cir.1988). We decided this much in another case involving the same parties to the present action. See *Diaz López v. Commonwealth Oil Refining Co.,* No. 84–2889, slip op. at 4 (D.C. Puerto Rico May 10, 1989) (no jurisdiction under LMRA for action challenging termination of contributions to an employee medical plan under a CBA when termination occurred after expiration of the CBA), *aff'd,* 900 F.2d 246 (1st Cir.1990), *citing International Union, United Auto., Aerospace & Agr. Implement Workers of America, Local 899, UAW v. Atlas Tack Corp.,* 590 F.2d 384 (1st Cir.1979) (found lack of jurisdiction under LMRA Section 301 where union sued in federal court to prevent the employer from terminating the plan and distributing the plan's assets to the beneficiaries after the CBA expired). This court lacks jurisdiction under the LMRA because the CBA expired in 1985 and the plaintiff's alleged causes of action arise from facts occurring after the CBA expired.

### B. ERISA CLAIM

■ We find that we have jurisdiction over plaintiff's claims under ERISA. The long term disability plan in question here is an employee welfare benefits plan under ERISA, against which the insurer may offset social security benefits payable to the disability plan participant. ERISA defines an employee welfare benefits plan as follows:

(1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, *disability,* death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1) (emphasis added). Clearly it can be seen from this statutory language that long term disability benefit plans are employee welfare benefit plans under ERISA. Many cases have found such long term disability plans to be employee welfare benefit plans. See *Rodriguez–Abreu,* 986 F.2d at 585; *Ruble v. UNUM Life Ins. Co.,* 913 F.2d 295, 297 (6th Cir.

1990); *Anweiler (Lynn E.) v. American Electric Power Service Corporation, Aetna Life Insurance Company,* 3 F.3d 986, 991 (7th Cir.1993); *Dunn v. Western Oceanic, Inc.,* No. 87–0912, 1988 WL 24134 (E.D.La. 1988).

Plaintiff claims that his disability benefits cannot be offset by social security income because his benefits are vested and nonforfeitable. Plaintiff is completely incorrect. Whether they exist independently or as a part of a comprehensive retirement plan, disability benefits plans are employee welfare benefit plans which are not subject to the vesting and nonforfeiture provisions governing pension plans under ERISA. 29 U.S.C. § 1051(1); *Rodriguez–Abreu,* 986 F.2d at 585; *McBarron v. S & T Industries, Inc.,* 771 F.2d 94, 98 (6th Cir.1985) ("Congress intended to allow any plan or part of a plan having disability provisions to be considered an 'employee welfare benefit plan,' and thus be exempt from the anti-forfeiture provisions."); *Kreutzer v. A.O. Smith Corp.,* 951 F.2d 739 (7th Cir.1991) (employee welfare benefits do not vest like pension benefits and employer may change or abolish them unilaterally without violating ERISA); *Howe v. Varity Corp.,* 896 F.2d 1107 (8th Cir.1990) (unlike pension benefits, coverage under a welfare benefit plan does not begin at an employee's retirement; mere fact that employee welfare benefits continue in retirement does not indicate that the benefits become vested for life at the moment of retirement). ERISA does not prohibit offsetting other income received as social security benefits against long term disability benefits. *Godwin v. Sun Life Assur. Co. of Canada,* 980 F.2d 323, 327, 329 (5th Cir.1992) (validity of social security and workers' compensation offsets against disability benefits is well established), *citing Alessi v. Raybestos–Manhattan,* Inc., 451 U.S. 504, 514–15, 526, 101 S.Ct. 1895, 1901–02, 1907, 68 L.Ed.2d 402 (1981) (integration of employee benefits with other sources of income available to employees is permissible); *Anweiler,* 3 F.3d at 991 (insurance company had right to offset disability benefits by social security benefits payable to the beneficiary; reimbursement agreement signed by beneficiary to cover overpayments by the insurance carrier were

supported by adequate consideration); *Fisher v. Metropolitan Life Ins. Co.,* 895 F.2d 1073 (5th Cir.1990) (determination of plan administrator to withhold guaranteed monthly minimum payments of $25 under disability plan to recover overpayments did not violate the terms of the plan guaranteeing a $25 monthly minimum); *see also Lamb v. Connecticut General Life Ins. Co.,* 643 F.2d 108 (3rd Cir.1981) (under Social Security Act, defendant insurer was not prohibited from offsetting Social Security disability benefit increases received by disabled plaintiff against benefits payable to plaintiff under terms of a group disability insurance policy). Such offsetting does not violate the nonforfeiture provision of ERISA because the non-forfeiture provision does not apply to welfare benefit plans in the first place.

In addition, giving the contractual language of the CBA and the insurance policy its plain meaning, we find that the language of the CBA and the insurance policy is not ambiguous: the language of the two documents is consistent and does not allow reasonable but differing interpretations of its meaning. See *Rodriguez–Abreu,* 986 F.2d at 586. The Income Protection provision merely refers to an "insurance plan consistent with sound insurance practices protecting the income of totally disabled employees," providing benefits based on "50% of the basic income of the employee after six (6) months of total disability and for continuous total disability up-to-the age of 65, subject to the limitations normally found in insurance coverage of this type." As the Schedule of Benefits indicates, the insurance policy provides benefits consistent with this CBA language. The offset of social security income from disability benefits is a limitation often found in long term disability insurance policies. *Anweiler,* 3 F.3d at 991.

## C. CLAIM FOR INFLICTION OF EMOTIONAL DISTRESS AND COMPENSATORY DAMAGES

■ Plaintiff's claim for damages for the mental anguish he has experienced because of the alleged statutory violation is meritless. First, we have found that no statutory violation has taken place. Second, state law

claims of infliction of emotional distress related to an employee benefit plan are preempted by ERISA. *See District of Columbia v. Greater Washington Bd. of Trade,* —— U.S. ——, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992) (ERISA preempts any state law that refers to or has connection with covered benefit plans and does not fall within a statutory exception even if the law is not specifically designed to affect such plans, or the effect is only indirect, and even if the law is consistent with ERISA's substantive requirements); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *compare Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821, 825–26 (1st Cir.1988) (a state law claim is preempted by ERISA if it relates to an employee benefit plan, but state law claim of infliction of emotional distress made by wife of benefit plan participant does not relate to husband's ERISA plan); *also see Lennon v. Walsh,* 798 F.Supp. 845, 849 (D.Mass.1992); *Parisi v. Trustees of Hampshire College,* 711 F.Supp. 57 (D.Mass.1989) (discharged employee's claim for intentional infliction of emotional distress resulting from denial of long-term disability benefits was preempted by ERISA because claim was based on alleged mishandling of request for information regarding benefits under ERISA plan). We find that plaintiff's claim of infliction of emotional distress is directly related to the dispute concerning the employee welfare benefit plan at issue in this case and does not meet any statutory exceptions. Therefore, ERISA preempts plaintiff's state law claim of infliction of emotional distress. In addition, the plaintiff cannot recover compensatory damages under ERISA. *Drinkwater,* 846 F.2d at 824 (compensatory and punitive damages are extra-contractual relief not within the terms of the ERISA-governed benefit plan); *Lafoy v. HMO Colo.,* 988 F.2d 97 (10th Cir.1993) (compensatory, money damages sought for permanent psychological injuries arising from alleged breach of health plan provisions and defendants' fiduciary duties under an ERISA plan are extra-contractual relief not available under equitable relief provision of ERISA).

## IV. CONCLUSION

Therefore, we conclude that the Connecticut General Life Insurance Company was entitled to reduce plaintiff's disability benefits by the amount he received in social security benefits. ERISA preempts plaintiff's state law claim of infliction of emotional distress. In addition, plaintiff's request for compensatory damages is one for extra-contractual relief which does not fall under ERISA's equitable relief provision. No genuine issues of material fact exist regarding plaintiff's claims. Therefore, we grant defendants' motion for summary judgment.

**SO ORDERED.**