Joseph H. KESSEN, Plaintiff,

v.

PLUMBERS' PENSION FUND, LOCAL 130, U.A., and James R. Belzer, Gerald M. Sullivan, Thomas J. McManus, George E. Quinn, Sr., Philip J. Hoza, Henry J. Swade, James T. Finn, James T. Sullivan, John H. Kyles and James W. Young, Trustees of The Plumbers' Pension Fund, Local 130, U.A., Defendants.

No. 94 C 985.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 27, 1995.

Stuart M. Widman, William N. Asnpach, Chicago, IL, for plaintiff.

Douglas A. Lindsay, Blake T. Lynch, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff, Joseph H. Kessen, was a plumber who in 1991 began receiving a pension under the Plumbers' Pension Fund, Local 130 U.A. In 1993, Mr. Kessen's pension was suspended on the ground that he was continuing to do plumbing work in violation of the terms of the Plan. After exhausting his administrative remedies, Mr. Kessen filed the present lawsuit, contending that the Trustees' interpretation of the Plan was arbitrary and capricious, that the Trustees are estopped from their interpretation of the Plan by prior inconsistent statements made to him before his retirement, and alleging a violation of fiduciary duty under ERISA. Jurisdiction is based on Section 1132(e) of the Employee Retirement Income Security Act of 1973, as amended ("ERISA"). 29 U.S.C. § 1132(e). Mr. Kessen has filed a motion for partial summary judgment. Defendants, including the Plumbers' Pension Fund, Local 130, U.A. (the "Plan"), James R. Belzer, Gerald M. Sullivan, Thomas J. McManus, George E. Quinn, Sr., Philip J. Hoza, Henry J. Swade, James T. Finn, James T. Sullivan, John H. Lyles and James W. Young, the Plan trustees, have also filed a motion for summary judgment.

### Undisputed Facts

The Fund is a multi-employer, employee benefit fund within the meaning of Section 1002(3) of ERISA and a defined pension benefit plan under Section 1002(35) of ERISA. 29 U.S.C. §§ 1002(3) and 1002(35).

Section 5.05A of the Plan provides, in part:

No retirement benefit shall be paid hereunder on account of any calendar month prior to the month next following a Participant's Normal Retirement Age to a Participant who becomes employed or self employed in the Plumbing Trade after retirement benefits have commenced.... For purposes of this Part A of Section 5.05, an individual shall be considered employed or self employed in the Plumbing Trade if he is employed or self employed in any occupation *which utilizes the skill or skills possessed by a plumber*.... (Emphasis added).

Under Section 2.19 of the Plan, "Normal Retirement Age means the day a Participant attains age 65." When he retired Mr. Kessen executed a document entitled "Important Notice" which provides:

A. Reemployment prior to 65th Birthday. 1. If such employment or self employment takes place within the United States, regardless of for how long, benefits are suspended until the month following the Participant's 65th birthday....

Mr. Kessen was born January 22, 1930. In 1990, Mr. Kessen was employed by the Chicago Transit Authority ("CTA") as a plumber. He applied for retirement benefits in December, 1990. Before doing so, he attended meetings for CTA plumbing department employees at the Union hall and at the CTA maintenance shops. These meetings were usually conducted by two of the Fund's Trustees (who according to the briefs in this case were also union officials), Thomas McManus ("Mr. McManus") and Gerald Sullivan ("Mr. Sullivan"). At these meetings, Mr. McManus and Mr. Sullivan told the group that non-licensed plumbers were permitted to rod sewer lines and catch basins, do preventive maintenance on compressors and pumps, run the Vactor truck, replace fire heads, set flappers on sprinkler system valves and do general cleanup work.[1]

On December 6, 1990, Mr. Kessen told John Bojan ("Mr. Bojan"), the Secretary of the Pension Fund, that he planned to retire on February 1, 1991, a date shortly following Mr. Kessen's 61st birthday. Mr. Bojan was authorized to discuss retirement entitlements with prospective retirees like Mr. Kessen. Mr. Kessen submitted to Mr. Bojan an application to receive pension benefits which represented that his last day of employment in the plumbing trade would be January 21, 1991. According to Mr. Kessen, he told Mr. Bojan that after retirement, he would do the work of a non-licensed plumber, as described by Mr. McManus and Mr. Sullivan. He says Mr. Bojan said that would be okay. Defendants deny this conversation. They say Mr. Kessen said only that he was going to be a member of a CTA cleaning crew, and that he would clean catch basins.

Mr. Kessen began receiving pension benefits in February, 1991. Neither the minutes of the Trustees' meeting of February 6, 1991 at which Mr. Kessen's pension benefit was approved nor the report on pension applications dated January 31, 1991, incorporated in the minutes by reference, contain any discussion of Mr. Kessen's intended post-retirement work duties at the CTA. However, Mr. Bojan was at the February, 1991 meeting at which Mr. Kessen's pension was approved. At least one trustee, James R. Belzer, testified that Mr. Kessen's post-"retirement" work was discussed at that meeting. (Belzer Dep., pp. 42–43). Mr. Bojan did not say anything at that meeting about his knowledge of Mr. Kessen's plans. When Mr. Kessen began receiving retirement benefits, he believed that the Trustees had approved the type of work that he was planning to do. Mr. Kessen would not have done the work which the Trustees later concluded was prohibited if he knew or believed that it would cause him to lose any benefits. Those benefits were a large part of his monthly income.

Between February, 1991 and September, 1994, Mr. Kessen's job duties at the CTA included rodding subway station and subway line sewers, cleaning catch basins, oiling com-

---

1. The defendants assert that at the meetings Mr. McManus and Mr. Sullivan never said that these tasks would not utilize the skill or skills of a plumber. Defs.' Rule 12(n) Statement (filed 10/19/94), ¶ 4, p. 2. However, they do not contest that Mr. McManus and Mr. Sullivan stated that non-licensed plumbers may perform these tasks.

pressors, operating the Vactor truck,[2] replacing fire sprinkler heads and resetting flappers on sprinkler system valves. Non-licensed plumbers at the CTA may perform all the duties that Mr. Kessen performed. One need not be an apprentice plumber to learn how to do these tasks.

A letter dated August 11, 1992 from Plumbers' Pension Fund's counsel, David J. Creagan, Jr., informed Mr. Kessen that "[i]t has been reported that on several occasions that after you commenced receiving retirement benefits from the Plumbers' Pension Fund, you did plumbing work." By letter dated September 30, 1992, Plumbers' Pension Fund's lawyer, Robert A. Wolz ("Mr. Wolz") advised Mr. Kessen that the Trustees would resolve all benefits disputes by means of written submissions. He was advised to set forth his position in writing. In a letter dated October 16, 1992 to Mr. Kelly, Mr. Kessen was reminded to provide to the Trustees in writing all details he felt relevant to his position.

The CTA Manager of Electrical/Mechanical Bus Systems Maintenance (the CTA department in which Mr. Kessen is employed), William Lyke, sent a letter dated September 23, 1992 to the Chicago Journeyman Plumbers' Union, Local 130 describing Mr. Kessen as a plumber and stating that his duties included maintaining fire lines, performing preventive maintenance on compressors and pumps and rodding sewers. Mr. Kessen's attorney, Mr. Kelly, submitted a letter dated December 31, 1992 to the Trustees stating that Mr. Kessen's duties with the CTA included "rodding subway station and subway line sewer lines and cache [sic] basins." No correspondence described any alleged oral statements or interpretations of the Fund's suspension of benefit rules by Mr. Sullivan or Mr. McManus.

The Trustees considered Mr. Kessen's situation during their meeting on January 13, 1993. The minutes of that meeting state that the Trustees determined that the rodding of drains and sewers utilize the skills of a plumber within the meaning of the Fund's suspension of benefits rule in the Plan. The minutes further state that the Trustees decided that the maintenance of fire lines and the performance of preventive maintenance on compressors and pumps utilize plumbing skills within the meaning of the Plan. The Trustees did not consult any studies or other information from actuaries and did not consider the effect of their decision on the actuarial integrity of the Plan.

On January 25, 1993, Mr. Kessen received a letter dated January 15, 1993 from Plumbers' Pension Fund's counsel, Mr. Wolz, stating that the Trustees had determined that Mr. Kessen's employment with the CTA utilizes the skill or skills possessed by a plumber, and therefore, his monthly pension benefit would be suspended under Section 5.05A of the Plan. The letter stated that the specific tasks that Mr. Kessen was performing which utilized plumbing skills were rodding subway station and subway sewer lines and catch basins, maintaining fire lines, and performing preventive maintenance on compressors and pumps.

After receiving Mr. Wolz's letter, Mr. Kessen appealed the Trustees' decision. Upon review, the Trustees upheld their prior determination that Mr. Kessen's employment with the CTA utilized the skill or skills possessed by a plumber.

### A. Count I: Whether the Trustees' Suspension of Mr. Kessen's Benefits Was Arbitrary and Capricious

Where a pension benefit plan gives a fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, challenges to the fiduciary's interpretations are to be reviewed under the arbitrary and capricious standard of review. *Saracco v. Local Union 786 Building Material Pension Fund,* 942 F.2d 1213, 1214 (7th Cir.1991) (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989)). The Plan document grants the Trustees the power to determine eligibility for benefits and construe the terms of the Plan. Section 6.04(e)

---

**2.** The Vactor truck uses a hose to remove dirt, grease, silt, oil spills and other debris from pits at CTA garages.

of the Plan document grants the Trustees the power

> [t]o make determinations as to the rights of Participants applying for benefits hereunder and to afford any such Participant, or the Contractors or Contributors, or the Union, if dissatisfied with any such determination, a right to a hearing thereof, and to provide rules and procedures for the conduct of such hearings, not inconsistent herewith. The determination made after any such hearing shall be final and binding on all parties.

Section 6.02 of the Plan further provides:

> All decisions and actions of the Pension Benefit Trustees pertaining to the construction of the Plan or the administration of the Plan, the exercise of their powers as Pension Benefit Trustees, the payment of benefits, and all other matters germane to the administration of the Plan shall require the concurring votes of at least three Union Trustees and at least three Contractor Trustees and in every case all decisions made by such vote shall be binding upon the Plumbing Contractors' Association, the Contractors, the Contributors, the Union, the Participant, and any other persons interested in the Plan.

Since the Plan language explicitly grants the Trustees discretionary authority to determine eligibility for benefits and to construe the terms of the Plan, this Court must review the Trustees' decision to suspend Mr. Kessen's benefits under the arbitrary and capricious standard.

The Seventh Circuit has observed:

> Although it is an overstatement to say that a decision is not arbitrary or capricious whenever a court can review the reasons stated for the decision without a loud guffaw, it is not much of an overstatement.

*Russo v. Health, Welfare & Pension Fund, Local 705, International Brotherhood of Teamsters,* 984 F.2d 762, 766 (7th Cir.1993). Under the arbitrary and capricious standard of review, if the Trustees' determination was reasonable, this Court may not disturb it. *Id.* at 765; *Lister v. Stark,* 942 F.2d 1183, 1188 (7th Cir.1991).

The reasonableness requirement commands that I give great deference to the Trustees' interpretation. *Lister v. Stark, supra,* 942 F.2d at 1188. To do so, this Court must simply examine whether the Trustees' decision was based on a reasonable interpretation of the Plan's language and the evidence in the case. *Russo v. Health, Welfare & Pension Fund, Local 705, International Brotherhood of Teamsters, supra,* 984 F.2d at 765. If so, I will not disturb it. However, because great deference does not mean no review at all, the Trustees' interpretation of the Plan will not pass the reasonableness test if they

> entirely failed to consider an important aspect of the problem, offered an explanation for [their] decision that runs counter to the evidence before [them] or is so implausible that it could not be ascribed to a difference in view or the product of [their] expertise.

*Lister v. Stark, supra,* 942 F.2d at 1189.

### 1. *Whether the Trustees' Decision Was Reasonable*

Prior to the January, 1993 Board meeting at which the Trustees determined that Mr. Kessen's post-retirement duties at the CTA required him to use plumbing skills, the Trustees twice invited Mr. Kessen to provide in writing all information he wished the Trustees to take into account in making their decision.

At the January, 1993 meeting, in response to the information received from Mr. Kessen and the CTA, the Trustees noted that the rodding of sewers for the CTA has always been performed by plumbers, and since at least 1985, all the tasks performed by Mr. Kessen have been performed by Local 130 journeyman plumbers. The Trustees concluded that the rodding of drains and sewers utilizes plumbing skills and that the performance of these tasks by individuals who possess such skills enhances both the quality and efficiency of the work performed. The Trustees also concluded that the maintenance of fire lines and performance of preventive maintenance on compressors and pumps utilizes plumbing skills. As a result, the Trustees suspended payment of Mr. Kes-

sen's retirement benefits under Section 5.05A of the Plan.

Mr. Kessen appealed the Trustees' determination. Prior to the April, 1993 meeting at which the Trustees considered Mr. Kessen's appeal, they again invited him to submit in writing all information he wished the Trustees to take into account. Mr. Kessen appeared at the meeting with his attorney, Mr. Kelly. The Trustees asked Mr. Kessen many questions about his current employment and carefully reviewed Mr. Kessen's statements and the other evidence he presented. They noted that Mr. Kessen did not contest that he performed the duties upon which the Trustees' original determination to suspend benefits was based. The Trustees upheld their prior determination that Mr. Kessen was utilizing the skill or skills of a plumber in connection with his job at the CTA, and therefore, affirmed their prior suspension of Mr. Kessen's pension benefits.

The undisputed facts demonstrate that the Trustees reviewed the relevant data. They did not fail to consider an important aspect of the problem and their decision neither runs counter to the evidence before them nor is so implausible that it could not be ascribed to a difference in view or the product of their expertise. Accordingly, the Trustees' decision constitutes a reasonable interpretation of the Plan language and the evidence in the case.

Mr. Kessen claims the Trustees' interpretation of the Plan was unreasonable because they did not consider important facts since he was not permitted to present evidence of certain statements by two of the Fund's Trustees, Mr. McManus and Mr. Sullivan. The statements by Mr. McManus and Mr. Sullivan that Mr. Kessen claims the Trustees unreasonably failed to consider simply informed employees at various meetings attended by Mr. Kessen that non-licensed plumbers are permitted to perform certain tasks. Mr. Kessen does not claim that Mr. McManus and Mr. Sullivan said that duties which non-licensed plumbers may perform do not use "the skill or skills of a plumber" under the Plan. Moreover, there is no evidence that the distinction between tasks performed by licensed and non-licensed plumbers is material to determining whether a task would "utilize[ ] the skill or skills possessed by a plumber." Mr. McManus' and Mr. Sullivan's statements were therefore irrelevant to the Trustees' determination of whether Mr. Kessen's duties used plumbing skills.

Mr. Kessen further contends that the Trustees' determination that Mr. Kessen's job responsibilities at the CTA use plumbing skills was arbitrary and capricious because it reversed earlier "interpretations" of the Plan by Mr. McManus, Mr. Sullivan, Mr. Bojan and the Board itself. "Uniform interpretation and application of plan rules are important factors in deciding whether a denial of benefits is arbitrary and capricious." *Russo v. Health, Welfare & Pension Fund, Local 705, International Brotherhood of Teamsters, supra,* 984 F.2d at 766. In this case, however, there is no evidence that Mr. Sullivan or Mr. McManus ever interpreted the Plan. All they are alleged to have said was that a non-licensed plumber could perform certain duties. Although Mr. Bojan's alleged statements must be considered in terms of Mr. Kessen's estoppel claim, *see infra,* there is no evidence that the Trustees interpreted the Plan in a non-uniform manner. The Trustees are therefore entitled to summary judgment on this claim.

### 2. Mr. Kessen's Request For Summary Judgment on Count I for the Time Period Since He Turned 65

Mr. Kessen argues in his reply brief that because he reached his 65th birthday on January 22, 1995, he is entitled to retirement benefits beginning February, 1995. At the time the parties filed for summary judgment, Mr. Kessen was not yet 65 years old, and the Trustees had not reached a decision regarding his retirement benefits under the section applicable to persons age 65 or older. The only decision as to which Mr. Kessen exhausted his administrative remedies is the Trustees determination to suspend Mr. Kessen's early retirement benefits because his job duties utilized plumbing skills. Since Mr. Kessen has not exhausted his administrative remedies, and indeed, there has been no decision on his application for regular retirement benefits, the issue is not properly before this court.

**B. *Count II: Whether the Trustees' Suspension of Mr. Kessen's Benefits Breached Their Fiduciary Duty***

■ Count II of Mr. Kessen's complaint claims that the Trustees breached their fiduciary duty to Mr. Kessen since their decision to suspend benefit payments resulted in the forfeiture of a portion of his accrued benefits in violation of ERISA. Mr. Kessen abandons this theory in his summary judgment briefs and argues instead that this Court should not grant Plumbers' Pension Fund's request for summary judgment on Count II because the Trustees breached their fiduciary duty of loyalty to him by interpreting the phrase "skill or skills of a plumber" in an overly broad manner in order to protect the union's jurisdiction. Mr. Kessen's change of theories is not fatal to his breach of fiduciary duty claim due to the federal system's "forgiving" notice pleading rules. *Teumer v. General Motors Corporation,* 34 F.3d 542, 545 (7th Cir.1994).[3]

■ ERISA permits a participant to bring an action "for appropriate relief under section 1109." 29 U.S.C. § 1132(a)(2). Section 1109 makes personally liable "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries." 29 U.S.C. § 1109(a). Under Section 1109, liability for a breach of fiduciary duty runs only to the plan and not to individual participants or beneficiaries. *Anweiler v. American Electric Power Service Corporation,* 3 F.3d 986, 992 (7th Cir.1993). Because Mr. Kessen's action is for individual relief rather than plan-wide relief, he cannot maintain an action under Section 1132(a)(2).

■ The only other section of ERISA which could permit Mr. Kessen to bring his breach of fiduciary duty claim against the Trustees is Section 1132(a)(3). *Id.* at 992, 993 n. 4. Section 1132(a)(3) allows a participant to bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or ... to obtain the appropriate equitable relief

to redress such violations." 29 U.S.C. § 1132(a)(3). A fiduciary's breach of his or her fiduciary duties violates provisions of subchapter I of ERISA. 29 U.S.C. § 1104; *Anweiler v. American Electric Power Service Corporation, supra,* 3 F.3d at 992. An individual may maintain an action under Section 1132(a)(3) seeking "appropriate equitable relief" for a breach of fiduciary duty. *Id.* at 993. "Appropriate equitable relief" in Section 1132(a)(3) includes only typical remedies available in equity and not legal remedies such as compensatory damages or monetary relief. *Id.* (citing *Mertens v. Hewitt Associates,* —— U.S. ——, ——, 113 S.Ct. 2063, 2069, 124 L.Ed.2d 161 (1993)). Since Mr. Kessen seeks monetary relief, a legal remedy, a suit under Section 1132(a)(3) is unavailable to him. Accordingly, as a matter of law, Mr. Kessen may not bring his claim for breach of fiduciary duty against the Trustees, and Plumbers' Pension Fund is entitled to summary judgment on this Count II.

**C. *Count III: Whether Plumbers' Pension Fund Was Estopped From Suspending Mr. Kessen's Benefits***

■ Mr. Kessen claims that Mr. Sullivan, Mr. McManus, and Mr. Bojan made representations that Mr. Kessen's post-retirement job duties at the CTA do not utilize plumbing skills according to the Plan and therefore would not prevent Mr. Kessen from receiving pension benefits. Specifically, the interpretation by Mr. Sullivan and Mr. McManus upon which Mr. Kessen relies are the assurances (at meetings attended by Mr. Kessen prior to retiring) that non-licensed plumbers may perform certain duties, including rodding sewer lines, maintaining fire lines and doing preventive maintenance on compressors and pumps. Mr. Bojan's purported "interpretation" was made in January, 1991 when Mr. Kessen allegedly told him that after retirement he would do only the jobs that could be performed by non-licensed plumbers as described by Mr. Sullivan and Mr. McManus and Mr. Bojan allegedly

---

**3.** In its main brief, Plumbers' Pension Fund explains why it deserves summary judgment on Count II based on Mr. Kessen's breach of fiduciary duty claim as plead in his complaint. Mr. Kessen does not controvert Plumbers' Pension Fund's argument. Consequently, this Court does not address Mr. Kessen's breach of fiduciary duty theory alleged in his complaint.

agreed that Mr. Kessen could do that type of work and still collect his pension benefits. He argues that due to these representations, and his reliance on them in deciding to retire, the Trustees were estopped from later determining that his responsibilities at the CTA involved plumbing skills and suspending his pension benefits.

As discussed earlier, there is no evidence to support Mr. Kessen's argument that Mr. Sullivan or Mr. McManus ever purported to interpret the Plan document. Accordingly, the Plumbers' Pension Fund cannot be estopped to deny benefits based on their statements.

█ If Mr. Kessen's statement of what the Plan Secretary, Mr. Bojan, allegedly said is taken as true, as it must be for purposes of defendants' motion for summary judgment, the issue becomes whether ERISA permits enforcement of Mr. Bojan's statement. In this Circuit, it is still an open question whether oral interpretations of Plan documents may be given effect. *E.g., Miller v. Taylor Insulation Co.,* 39 F.3d 755, 759 (7th Cir. 1994); *Schoonmaker v. Employee Savings Plan,* 987 F.2d 410, 412–13 (7th Cir.1993). (While a footnote in *Thomason v. Aetna Life Ins. Co.,* 9 F.3d 645, 650 n. 10 (7th Cir.1993), indicates the question could be answered adversely to Mr. Kessen, I conclude that *Miller* still leaves the question open.) *See, e.g., Lockrey v. Leavitt Tube Emp. Profit Sharing Plan,* 766 F.Supp. 1510 (N.D.Ill.1991) (J. Rovner), following *Kane v. Aetna Life Ins. Co.,* 893 F.2d 1283 (11th Cir.1990), in holding that ERISA would permit an oral interpretation that is not inconsistent with the language of a Plan document. In appropriate cases, it seems reasonable to hold that a Plan may be bound by oral interpretations of a Plan document made by an agent with authority to provide information to a Plan participant in the face of reliance by a participant on the interpretation.[4]

█ "An estoppel arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation." *Black v. TIC Investment Corp.,* 900 F.2d 112, 115 (7th Cir.1990). The alleged information provided in this case was that certain work, namely work that other trustees had said could be done by someone other than a licensed plumber, would not be considered "skills possessed by a plumber," as that term is used in the Plan document. There is no question that the person making the representation, the Plan Secretary, was authorized to assist participants in making applications for pension benefits and respond to questions regarding the Plan. Defendants' Answers to Interrogatories, No. 10. That does not answer the question of whether Mr. Kessen's reliance on the interpretation allegedly given him by Mr. Bojan was reasonable, either in terms of the interpretation or the fact that the information came from Mr. Bojan. Neither party has addressed this question.

In addition, as noted earlier, the parties do not agree on whether Mr. Bojan made the alleged representation. That is therefore a disputed issue of material fact. If a fact finder determines that Mr. Bojan did not make the statement, or that even if he did, Mr. Kessen's reliance was unreasonable, the estoppel claim falls. Mr. Kessen's claim may fail anyway because the Seventh Circuit may conclude that ERISA bars oral interpretations like the one allegedly made in this case. On this record, and on the present state of the law, however, the Plumbers' Pension Fund's motion for summary judgment will be denied. Obviously, since factual issues remain to be decided, Mr. Kessen's cross-motion must also be denied.

### Conclusion

For the reasons set forth above, Plumbers' Pension Fund's motion for summary judgment is granted in part and denied in part.

---

4. The Seventh Circuit has noted in a different context:

> [L]anguage always leaves *some* ambiguities, whether verbal (intrinsic) or situational (extrinsic). Drafters cannot anticipate all possible interactions of fact and text, and if they could

the attempt to cope with them in advance would leave behind a contract more like a federal procurement manual than like a traditional insurance policy.

*Harnischfeger Corp. v. Harbor Insurance Co.,* 927 F.2d 974, 976 (7th Cir.1991).

Mr. Kessen's cross-motion for partial summary judgment is denied.