Hilary ANDERSON, Plaintiff,

v.

ILLINOIS BELL TELEPHONE COMPA-NY n/k/a Ameritech Illinois and Ameri-tech, Ameritech Sickness and Accident Disability Benefits Plan, and Ameritech Comprehensive Health Care Plan, De-fendants.

No. 96 C 3286.

United States District Court,
N.D. Illinois,
Eastern Division.

March 26, 1997.

Jeffrey Morris Jacobson, Jacobson, Berlin & Kotz, Chicago, IL, Charles Drake Boutwell, Northbrook, IL, for Hilary Anderson.

J. Paula Roderick, Barbara Susan Smith, Grady B. Murdock, Jr., Jerome A. Siegan, Earl L. Neal & Associates, Chicago, IL, Benjamin Ghess, Ameritech Corp., Chicago, IL, for Illinois Bell Telephone Co., Ameritech Sickness Disability Benefits Plan and Ameritech Comprehensive Health Care Plan.

## *MEMORANDUM OPINION AND ORDER*

CASTILLO, District Judge.

Plaintiff Hilary Anderson brings this employment-based action against the following defendants: the Illinois Bell Telephone Company, now known as Ameritech Illinois and Ameritech (collectively, "Ameritech"); the Ameritech Sickness Disability Benefits Plan ("ASDBP"); and the Ameritech Comprehensive Health Care Plan ("ACHCP"). She brings claims under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, against Ameritech only (Count I); Title I of the Americans with Disabilities Act of 1990 ("ADA") and Title I of the Civil Rights Act of 1991 against Ameritech only (Count II); the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a), against Ameritech and the ASDBP (Count III); the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161, against Ameritech and ACHCP or, alternatively, against Ameritech alone under 29 U.S.C. §§ 1132(a)(2) and (3) (Count V); and state law claims alleging common law breach of contract and violations of the Illinois Wage Payment and Collection Act, 820 ILCS 115/4, against Ameritech only (Count IV). Pending before the court is the defendants' motion to dismiss various aspects of Counts II through V.

## RELEVANT FACTS

Anderson's first amended complaint alleges the following facts which are taken as true on a motion to dismiss. *Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir.1996). Ameritech, a corporation with more than 500 employees, maintains two employee benefit plans, the ASDBP and the ACHCP. Ameritech is a fiduciary to the ACHCP. In addition, Ameritech provides for the payment of benefits under each of these plans from its assets. Anderson was employed by Ameritech under the terms of an oral contract for approximately fifteen years. The last position that Anderson held at Ameritech was that of a Level 2A Manager.

Due to illness, Anderson went on sick leave in early November 1992. Anderson's last day of active work was November 6, 1992, and she began collecting disability benefits under the ASDBP on November 17, 1992. Anderson was eligible to receive these benefits for one full year. Ameritech prematurely stopped the payment of benefits to Anderson on November 1, 1993, at which time Anderson requested payment of benefits through November 17, 1993. In addition, Anderson sought an extension of benefit payments through November 30, 1993. This request was submitted to the Ameritech Employees' Benefit Committee and was subsequently approved in March 1994. Despite the Committee's approval, however, Anderson has never received benefits for the period of November 1, 1993 through November 30, 1993.

On November 17, 1993, Anderson sent a letter to Ameritech stating that she would be ready, willing, and able to return to work as of December 1, 1993. Although Anderson had not resigned and continued to await assignment, Ameritech failed to assign any duties to her. During the spring of 1994, Ameritech sent Anderson letters congratulating her on completing 15 years in service, and other materials designed for current employees. Ameritech terminated Anderson's employment on June 28, 1994. On July 7, 1994, Ameritech sent Anderson a notice informing her of her right to elect continuing life insurance coverage. Ameritech filled

Anderson's position with individuals under the age of forty.

Anderson called Ameritech every month beginning in July, 1994 with questions regarding her health insurance coverage. Until October 18, 1995, Ameritech and the ACHCP continuously advised Anderson that she was covered under the ACHCP. On October 11, 1995, Anderson's doctor verified Anderson's coverage under the ACHCP. Anderson's doctor then scheduled Anderson for surgery which was performed on October 16, 1995. In November of 1995, Anderson learned that the ACHCP refused to pay for her surgery, as her health care coverage had been retroactively canceled effective October 1, 1995. Upon cancellation of Anderson's health care coverage, neither Ameritech nor the ACHCP provided Anderson with notice of her right to elect continuation or conversion health insurance coverage.

## LEGAL STANDARDS

In considering a motion to dismiss, a court takes all well-pled factual allegations as true, and views those allegations and any reasonable inferences drawn from them in the light most favorable to the plaintiff. *Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir. 1996). All ambiguities are resolved in the plaintiff's favor. *Curtis v. Bembenek,* 48 F.3d 281, 283 (7th Cir.1995). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

When ruling on a motion to dismiss, a court may consider exhibits attached to the complaint. Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *Schnell v. City of Chicago,* 407 F.2d 1084, 1085 (7th Cir.1969). In addition, documents that were not attached to the complaint but are referred to in the complaint and are central to the claims raised will be treated as part of the pleadings. *Wright v. Assoc. Ins. Cos., Inc.,* 29 F.3d 1244, 1248 (7th Cir.1994).

## ANALYSIS

The defendants have not raised any arguments as to Count I in this motion to dismiss. Thus, the court will first consider the defendants' motion as it relates to Count II, followed by Counts III, V, and IV in that order.

### Count II: Damages Recoverable Under the ADA

In Count II, Anderson alleges that Ameritech violated the ADA and the Civil Rights Act of 1991. Anderson prays for compensatory damages in an unspecified amount as well as punitive damages in the amount of $300,000. Ameritech states that the ADA limits recovery of compensatory and punitive damages to a combined total amount of $300,000. Ameritech moves to strike Count II to the extent that it seeks damages in excess of the statutory limit.

■ Anderson has conceded, as she must, that the statutory limit on damages for a violation of the ADA by an employer with more than 500 employees is $300,000. 42 U.S.C. § 1981a(b)(3)(D) (1997). Ameritech responds to Anderson's concession by arguing that Count II should be stricken in its entirety and Anderson should be required to amend her complaint to comport with the damage limitations of the ADA. Rather than requiring the plaintiff to amend her complaint, this Court prefers to simply strike the unavailable remedy. *See Cabin v. Plastofilm Indus., Inc.,* No. 96 C 2564, 1996 WL 496604 at *2 (N.D.Ill. Aug.29, 1996). Ameritech's motion to strike Anderson's demand in Count II for amounts in excess of $300,000 is granted.

### Count III: Recovery of November 1993 Benefits

In Count III, Anderson claims that Ameritech and the ASDBP violated ERISA by failing to provide her with benefits for the period of November 1, 1993 through November 30, 1993 after the plan administrator agreed to do so. She seeks to recover these benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). Ameritech requests dismissal from Count III, arguing that the only permissible defendant under § 1132(a)(1)(B)

is the benefit plan. Anderson's response is twofold. First, Anderson asserts that Ameritech is a proper defendant in an action for the recovery of benefits because "Ameritech is the fiduciary that provides the services to maintain the ASDBP" and fiduciaries are proper defendants under ERISA. Second, Anderson contends that since the payment of benefits under the ASDBP is provided by Ameritech, Ameritech will be the ultimate cost bearer anyway, and thus will not suffer any harm if retained as a defendant.

■ Section 1132(a)(1)(B) states that an ERISA plan beneficiary may bring a civil action "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (1997). It is well established that the proper defendant to a § 1132(a)(1)(B) suit is the plan. *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1490 (7th Cir.1996) (the appropriate defendant in a civil action brought under § 1132(a)(1)(B) is the plan itself; *Riordan v. Commonwealth Edison Co.,* 953 F.Supp. 952, 956–57 (N.D.Ill.1996) (the only proper defendant in a § 1132(a)(1)(B) claim is the plan as an entity).[1] In the present case, the plan subject to suit is ASDBP. Although Anderson claims in her complaint that Ameritech maintains the ASDBP, and the letter approving the payment of benefits for the month of November 1993 (Ex. B) is on Ameritech stationery, Anderson does not suggest—and we cannot conclude—that Ameritech and the ASDBP are one and the same.

Anderson does not attack the inherent limitations on who may be sued under § 1132(a)(1)(B). Rather, Anderson argues that Ameritech is a proper defendant because ERISA allows for civil actions against the fiduciary of the plan. By endeavoring to detain Ameritech as a defendant based on Ameritech's fiduciary relationship with the ASDBP, assuming arguendo that such a relationship exists, Anderson implicitly attempts to recast her claim against Ameritech as one for breach of fiduciary duty. Although subsections of § 1132 other than (a)(1)(B) allow a breach of fiduciary action to be brought by a participant of the benefit plan, Anderson has not pled such a claim. Even aside from the fact that she specifically identifies subsection (a)(1)(B), and not the other subsections, as the source of her claim, the allegations of Count III do not support a claim for breach of fiduciary duty under either of the other subsections.

In *Anweiler v. American Elec. Power Serv. Corp.,* 3 F.3d 986 (7th Cir.1993), the court noted that "[a]n action to recover from a breach of fiduciary duty ... is distinct from an action to recover plan benefits under section 1132(a)(1)(B) of the Act," and cited *McMahon v. McDowell,* 794 F.2d 100, 109 (3d Cir.1986) to the effect that "when a plaintiff's ERISA claim is based upon a breach of fiduciary duty, the plaintiff must bring the action under section 1132(a)(2) and not section 1132(a)(1)(B)."[2] *Id.* at 992. Under *Anweiler,* Anderson cannot bring a claim under subsection (a)(1)(B) and simultaneously state an implicit claim based upon subsection (a)(2).

■ Moreover, Count III cannot be read to state a claim under § 1132(a)(2). Subsection (a)(2) provides that a plan participant may commence a civil action against a plan fiduciary for breach of fiduciary duty as described in 29 U.S.C. § 1109. Section 1109(a) states that a fiduciary who breaches any of the duties imposed upon a fiduciary with regards to a benefit plan "shall be personally liable to make good *to such plan* any losses *to the plan* ... and to restore *to such plan* any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109 (emphasis

---

1. Ameritech and Anderson each cite *Auto Club Ins. Ass'n v. Safeco Life Ins. Co.,* 833 F.Supp. 637 (W.D.Mich.1993), to support their respective arguments. Anderson's reliance on this case is puzzling, as *Auto Club* holds that the proper defendant under § 1132(a)(1)(B) is the plan, and thus clearly advances Ameritech's position. *See id.* at 643.

2. An action for breach of fiduciary duty may also be brought under subsection (a)(3) of § 1132. *Kessen v. Plumbers' Pension Fund,* 877 F.Supp. 1198, 1205 (N.D.Ill.1995). *See* discussion *infra.*

added). As can easily be seen, relief under § 1109 may only be granted to the plan, not to individuals, and § 1132(a)(2) is subject to the same limitation. *Anweiler*, 3 F.3d at 992 (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140, 105 S.Ct. 3085, 3089, 87 L.Ed.2d 96 (1985)). Because Anderson brings Count III on behalf of herself, not the plan, she has not stated a claim under subsection (a)(2).

The only other section of ERISA which would allow Anderson to bring an action for breach of fiduciary duty is 29 U.S.C. § 1132(a)(3). In *Kessen v. Plumbers' Pension Fund*, 877 F.Supp. 1198 (N.D.Ill.1995), the court held that while a breach of fiduciary duty action cannot be maintained under subsection (a)(2) when individual relief is sought, such an action can be brought pursuant to subsection (a)(3). *Id.* at 1205; *see also Anweiler*, 3 F.3d at 993. However, recovery under subsection (a)(3) is limited to "appropriate equitable relief." *See* 29 U.S.C. § 1132(a)(3); *Anweiler*, 3 F.3d at 993. "Appropriate equitable relief" in an action for breach of fiduciary duty under section 1132(a)(3) includes only the usual remedies available in equity and not legal remedies like compensatory damages or monetary relief. *Id.* (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 260, 113 S.Ct. 2063, 2070–71, 124 L.Ed.2d 161 (1993)); *see also Kessen*, 877 F.Supp. at 1205 (plaintiff could not maintain an action under § 1132(a)(3) because the relief he sought was monetary). As Anderson seeks in Count III to recover unpaid benefits allegedly owed to her, a monetary form of relief, her action does not comport with the requirements of § 1132(a)(3).

Anderson's second argument as to why Ameritech should remain a defendant to Count III proves even less fruitful than her first. Anderson proposes, without providing any support, that the limitations of ERISA should be disregarded and Ameritech should remain a defendant in Count III because doing so will not impose any harm upon Ameritech. Without determining the impact that would befall Ameritech if retained as a defendant in Count III, we reject Anderson's argument as inconsistent with the stated provisions of ERISA. The Court finds that

Ameritech is not a proper defendant under § 1132(a)(1)(B), and that claims under §§ 1132(a)(2) and 1132(a)(3) are precluded by the relief Anderson requests. We therefore dismiss Ameritech from Count III.

*Count V: Continuation/Conversion Coverage*

Count V comprises Anderson's claims arising from the manner in which the defendants first provided and then canceled her health insurance, all without proper notice of her rights to continuation and conversion coverage as required by the COBRA amendments to ERISA, 29 U.S.C. §§ 1161–68. Anderson alleges that Ameritech repeatedly informed her that it was voluntarily maintaining her former health insurance coverage. After almost a year and a half of doing so, Ameritech abruptly canceled that coverage, without providing her with notice or the opportunity to elect further coverage under COBRA, just as she was undergoing expensive surgery. Anderson brings Count V against both Ameritech and the ACHCP, contending that both were required to provide her with notification of continuation and conversion coverage within specified time periods after her termination from Ameritech. Alternatively, Anderson alleges that Ameritech's failure to provide that notice amounted to a breach of fiduciary duty under 29 U.S.C. §§ 1132(a)(2) and (3). Anderson seeks injunctive relief and damages arising from these actions and omissions. The defendants have moved to dismiss the ACHCP from Count V, arguing that COBRA does not place any duty on a health care plan to provide notification of continuation coverage to a terminated employee. We conclude that, indeed, a plan such as the ACHCP is not required to provide notice of either continuation or conversion coverage to a terminated employee.

COBRA draws a distinction between continuation and conversion coverage. *Reynolds v. Massachusetts Cas. Ins. Co.*, 900 F.Supp. 915, 921 (E.D.Tenn.1995). Upon termination of employment, an employee is entitled to elect continuation coverage under the employer's group health plan for eighteen months. 29 U.S.C. §§ 1161(a), 1162(2). At the expiration of this eighteen-month period, the employee then has the opportunity to

convert the continuation coverage under the group policy to coverage under an individual plan, i.e., "conversion coverage." *Id.* § 1162(5); *Reynolds,* 900 F.Supp. at 921.

■ Continuation coverage possesses two advantages over conversion coverage. The first lies in the type of coverage required under each option. Section 1162(1) mandates that continuation coverage "must consist of coverage which ... is identical to the coverage provided under the plan to similarly situated beneficiaries" who have not been terminated. 29 U.S.C. § 1162(1). In other words, Anderson was entitled to the same exact coverage for a period of eighteen months after her termination that she received prior to her termination. No such "identical" coverage language appears in § 1162(5) for a conversion health plan. Section 1162(5) only requires that the employee be provided with the "option of enrollment under a conversion health plan." *Id.* § 1162(5). The conversion health plan need not be as comprehensive as the continuation health plan. *King v. Provident Life & Accident Ins. Co.,* 908 F.Supp. 1395, 1408 (S.D.Miss.1995).

■ The second advantage that continuation coverage holds over conversion coverage is the cost of each type of coverage. The continuation coverage mandated in CO-BRA is for a continuation of coverage at approximately the group rate. *Local 217, Hotel & Restaurant Employees' Union v. MHM, Inc.,* 976 F.2d 805, 809 (2d Cir.1992). Conversion coverage, on the other hand, is according to an individual policy. *See Reynolds,* 900 F.Supp. at 921. Continuation coverage at the group rate is generally much cheaper than coverage based on an individual plan. *See Local 217,* 976 F.2d at 809.

In Count V, both continuation and conversion coverage are at issue. Anderson alleges that Ameritech and the ACHCP have breached their statutory duties to inform her of her option to purchase each type of coverage. We conclude that the ACHCP is not liable to Anderson under either of these claims.

A comprehensive list of notice requirements for post-employment health care coverage is provided in 29 U.S.C. § 1166. Section 1166 does not place any post-termination duty of notification on the plan.[3] Rather, § 1166(a)(2) declares that "the employer of an employee under a plan must notify the administrator of a qualifying event" such as termination. *Id.,* § 1166(a)(2). Once the employer notifies the administrator of the qualifying event, the administrator then has a duty to notify the employee of the employee's rights. *Id.* § 1166(a)(4)(A).

■ Applying § 1166 to the present case, Ameritech, as Anderson's employer, was required to notify the plan administrator of Anderson's termination. The plan administrator was then obligated to notify Anderson of the qualifying event which triggered her right to elect continuation coverage. Anderson's complaint does not explicitly identify the plan administrator. However, Exhibit B to Anderson's first amended complaint is a letter informing Anderson that the Ameritech Employee Benefits Committee ("AEBC") approved a payment of benefits to Anderson on March 25, 1994. This letter creates a reasonable inference that the AEBC is the plan administrator. The AEBC, or possibly Ameritech, would then be the proper defendant to Anderson's claim of a failure to notify her of the right to elect continuation coverage. But the ACHCP had no statutory duty to notify Anderson of her right to continuation coverage, and thus is not a proper defendant to that claim.

■ Nor did the ACHCP have any statutory duty to notify Anderson of her option to enroll in a conversion health insurance plan. COBRA decrees that when "continuation coverage expires ... the plan must, during the 180–day period ending on such expiration date, provide to the qualified beneficiary the option of enrollment under a conversion health plan." 29 U.S.C. § 1162(5). The key question is whether the language "provide

---

**3.** Section 1166(a)(1) does obligate the plan to "provide, at the time of *commencement of* coverage under the plan, written notice to each covered employee and spouse of the employee (if any) of the rights provided under this subsection." 29 U.S.C. § 1166(a)(1) (emphasis added). Anderson has not alleged any failure to comply with this provision.

... the option" merely requires a health plan to have conversion coverage available, or whether the plan must also notify the beneficiary of the option to elect that coverage at the expiration of continuation coverage.

One of the few cases to consider whether § 1162(5) contains an implicit post-termination notification requirement is *O'Brien v. Rifkin, Radler & Kremer*, No. 95 C 5923, 1996 WL 41723 (N.D.Ill. Feb.2, 1996). In *O'Brien*, the plaintiff sued the defendant employer for failing to provide the plaintiff with notification of the option to enroll under a conversion health plan. *Id.* at *1. Although *O'Brien* considered the employer's notification duty under § 1162(5), the court's analysis is applicable to the plan's duty as well, because the court read the plain language of the statute as requiring only that conversion coverage be available, not that the employee be notified of its existence upon termination.[4]

In *O'Brien*, the court was "hesitant to hold that a statute requires notice when the statute itself clearly does not use the words 'notice' or 'notify.'"[5] *Id.* at *3. Lack of "notice" language, however, does not definitively resolve this issue. It must be noted that § 1161(a), which establishes a qualified beneficiary's right to continuation coverage, also does not use any "notice" language. Similar to § 1162(5), § 1161(a) merely states that the plan sponsor shall provide the qualified beneficiary with the option to elect continuation coverage under the plan. The critical difference in the duty of notification between the continuation and conversion sections is made clear in the "notice requirements" provision of COBRA, 29 U.S.C. § 1166. Whereas § 1166 explicitly imposes a requirement on the employer and the plan administrator to notify an employee of the option to elect continuation coverage in a situation where termination of the employee would lead to the end of the employee's

---

4. There is a line of Fifth Circuit cases, including *Baker v. Washington Nat. Ins. Co.*, 823 F.2d 156 (5th Cir.1987) and *Ramsey v. Colonial Life Ins. Co.*, 843 F.Supp. 1103 (S.D.Miss.1992), *aff'd*, 12 F.3d 472 (5th Cir.1994), holding that an insurer or employer must provide employees notice in some fashion regarding the scope of the conversion coverage—i.e., what is covered under the conversion plan. However, the court in *Baker* "declined to adopt a standard method" of notification with which insurers or employers must comply, instead offering several possibilities:

> A company can state in its contract that it will offer a specific level of coverage in its conversion policy.... It can attach the conversion policy it will issue to the group policy. It can refer to a form of conversion policy on file with the employer or the state insurance authority. It can delineate what particular risks it will cover or exclude in any conversion policy it may issue.

*Baker*, 823 F.2d at 159. *Cf Babikian ·v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 843–44 (9th Cir.1995) (company was obliged to provide employee with adequate information regarding the scope of its conversion policy); *Ramsey v. Colonial Life Ins. Co.*, 843 F.Supp. 1103 (S.D.Miss. 1992), *aff'd*, 12 F.3d 472 (5th Cir.1994) (insurer met the requirements of *Baker* by having a copy of its conversion policy on file with employer). Anderson claims in Count V that her employer and the plan failed to inform her *at the time of her termination or the cancellation of her coverage* of the existence of the conversion option. Nothing in the above case requires this specific type of post-termination notice. *See also supra* note 3.

5. In addition to relying on the plain language of § 1162(5) to decide that no notice requirement exists for that section, *O'Brien* also gave a substantial amount of deference to the Second Circuit's holding in *Howard v. Gleason Corp.* 901 F.2d 1154 (2d Cir.1990). In *Howard*, the plaintiff claimed that her employer had violated a New York state statute requiring the employer to notify the plaintiff of her option to elect conversion coverage. The court held that ERISA preempted the state statute and that ERISA does not mandate that an employee be notified of his right to conversion coverage. *Id.* at 1161.

A careful reading of *Howard* yields some doubt as to whether that court confronted the issue presented in *O'Brien* and in this case. While *Howard* does use the term "conversion," it is not used in the same context as conversion coverage under § 1162(5). First, *Howard* neglects to specify the particular provision of ERISA that it is analyzing. Second, § 1162(5) speaks of conversion coverage as coverage that follows an eighteen-month continuation coverage period, but in *Howard*, the coverage referred to followed immediately after termination. 901 F.2d at 1155. Furthermore, the conversion option referred to in § 1162(5) is for a health insurance plan, while *Howard* involved the conversion of a life insurance policy. *Id.* The combination of these factors renders it difficult to discern whether *Howard* even addresses § 1162(5). Notwithstanding these drawbacks to *Howard* for our purposes, the holding in *O'Brien* that § 1162(5) does not impose a notification requirement on the plan is well-supported in other ways, and we find it to be sound.

coverage, there is no mention of any notification requirement for conversion coverage. Indeed, as noted above, even the notification requirements for continuation coverage do not impose any post-termination duty on the plan. The comprehensive nature of CO-BRA, in conjunction with the plain language of § 1162(5), thus strongly suggests that there is no duty to notify a terminated employee of the right to conversion coverage. We therefore hold that § 1162(5) did not require the ACHCP to notify Anderson after her termination of her option to enroll under a conversion health plan. Thus, the ACHCP is not a proper defendant to any portion of Count V.

Ironically, Anderson defends against this conclusion by pointing to Ameritech's contention in Count III that the proper defendant to a claim brought to recover benefits under § 1132(a)(1)(B) is the plan. Anderson posits that because she also brings Count V pursuant to § 1132(a)(1)(B), the ACHCP is the proper defendant to Count V and should not be dismissed. The problem with this argument is that it ignores the lack of any underlying claim against the ACHCP.

The ACHCP has moved to dismiss Count V for failure to state a claim upon which relief can be granted. Anderson's claim against the ACHCP alleges that the ACHCP violated the notification requirements of CO-BRA. As we have decided that the ACHCP had no duty to notify Anderson of her options for either continuation or conversion coverage, it is clear that Count V fails to state a claim upon which relief can be granted against the ACHCP. If Count V had stated a claim upon which relief could be granted against the ACHCP, then the vehicle for bringing that action would be § 1132. *Hamilton v. Mecca, Inc.*, 930 F.Supp. 1540, 1554 (S.D.Ga.1996) (§ 1132 serves as the sole mechanism whereby plan participants or beneficiaries can enforce their COBRA rights). However, Anderson is not entitled to recover benefits from the ACHCP. The nature of the relief sought cannot change this fact.

Anderson's last attempt to avoid the dismissal of the ACHCP from Count V simply reiterates her harm argument in Count III.

Here Anderson contends that the ACHCP should remain a defendant to Count V because the ACHCP may ultimately bear the responsibility of paying her medical claims. As in Count III, this argument for denying the ACHCP's motion to dismiss is unsupported by case law or any provision of ERISA and the Court once again rejects it. Anderson fails to state a claim against the ACHCP upon which relief can be granted, and accordingly we dismiss the ACHCP from Count V.

### Count IV: State Law Claims

Anderson alleges that Ameritech failed to pay her wages for the period of December 1, 1993 through June 28, 1994. In Count IV, she claims that this failure violated the Illinois Wage Payment Collection Act ("IWP-CA"), and also breached her oral contract of employment with Ameritech. In response, Ameritech first argues that Count IV is insufficient as a matter of law, because IWPCA only allows for recovery of wages and benefits actually earned through the performance of work. Since it is clear from the complaint that Anderson did not engage in any actual labor for Ameritech during the time period in question, Ameritech contends that Anderson is not entitled to any compensation for that time period. Ameritech also argues that the documents that Anderson attached to her complaint mean that an oral contract cannot have existed between Anderson and Ameritech under Illinois law. Ameritech bases this contention on the proposition that an "implied oral contract" cannot be created when written documents exist between the parties on the same subject matter. The Court will consider Ameritech's latter argument first.

We initially note that Ameritech fails to identify the legal basis for its argument. "It is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Doherty v. City of Chicago,* 75 F.3d 318, 324 (7th Cir.1996) (quoting *Sanchez v. Miller,* 792 F.2d 694, 703 (7th Cir. *1986)); see also* Stransky v. Cummins Engine Co., 51 F.3d 1329, 1335 (7th Cir.1995) ("The federal courts will not invent

legal arguments for litigants.") Moreover, neither of the two legal doctrines that the defendants are possibly attempting to raise—the implied/express contract rule or the parol evidence rule—is applicable here. The first of these doctrines states that a court will not find that a contract between the parties is implied in law where there is also an express contract on the same subject matter. *Saunders v. Michigan Avenue Nat'l Bank,* 278 Ill.App.3d 307, 314, 214 Ill.Dec. 1036, 1043, 662 N.E.2d 602, 609 (1st Dist.1996). As Anderson has not brought any claims alleging the existence of an implied contract, this rule has no application here. The parol evidence rule states that where the parties have reduced their agreement to an integrated writing, extrinsic evidence, oral or written, must be excluded. *Epstein v. Northfield Inv. Co.,* No. 90 C 5283, 1991 WL 127746 at *2 (N.D. Ill. July 8, 1991). Anderson does not allege that a written contract ever existed between her and Ameritech, nor do the exhibits to her complaint establish the existence of one. It is self-evident that if a written contract never existed, there is no document which claims to be the final expression of the parties and the parol evidence rule is inapplicable.

■ Under Illinois law, if the parol evidence rule does not apply to the case at hand, but documents, nevertheless, do exist and those documents are "construed as part of the contract—and the contract is thus found to be partly written and partly oral—then the law governing oral contracts [applies]." *Respect Inc. v. Committee on the Status of Women,* 781 F.Supp. 1358, 1363 (N.D.Ill.1992). When an oral contract has been created, documents often accumulate over time that evidence the existence of that contract. While these documents may or may not ultimately be construed as part of the oral contract itself, they tend to support the inference that a contract exists between the parties.

■ In the present case, Anderson has attached four documents to her first amended complaint which she claims evidence the existence of an oral contract. These exhibits include a letter from Ameritech to Anderson stating that Anderson's sickness disability benefits would be extended (Ex. B), a letter from Ameritech to Anderson congratulating her for fifteen years of service with Ameritech (Ex. E), a follow up letter from Ameritech to Anderson reminding Anderson that she was eligible to receive an award for her fifteen years of service (Ex. F), and a pamphlet entitled "Your Personal Statement of Benefits" (Ex. G). In addition, Anderson has alluded to certain written records, including payroll records, which Ameritech allegedly has in its possession. Neither Anderson nor Ameritech contends that these documents constitute a written contract. Rather, Anderson asserts that the documents are evidence of the existence of an oral contract. Whether an oral contract exists is a matter to be decided by the trier of fact. *Sanchez v. Walls,* 59 Ill.App.3d 75, 78, 16 Ill.Dec. 507, 509, 375 N.E.2d 138, 140 (2d Dist.1978). We make no findings on that point, but merely hold that the existence of these documents does not preclude the creation of an oral contract between the parties. For all of these reasons, the defendants' attack on Anderson's breach of contract claim fails.

■ We now turn to the defendants' remaining argument under Count IV. Ameritech asserts that Anderson cannot recover wages under the IWPCA because she performed no work for Ameritech during the period for which she seeks wages, and application of the IWPCA is contingent on an employee actually performing services. A careful reading of the IWPCA shows, however, that nothing in it limits its reach to comport with Ameritech's interpretation. The IWPCA defines wages as "compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115/2 (1997). In fact, the Illinois legislature amended the IWPCA in 1984 to eliminate from the definition of wages the phrase "compensation for labor or services rendered." P.A. 83–198, § 1 (1984).

One of the few courts to address the issue Ameritech raises held that to be consistent with the legislative intent, the term "wages" must be broadly construed to encompass a wide range of compensation due employees.

**1218**

Shields v. Associated Volume Buyers, Inc., No. 93 C 7620, 1994 WL 110397 at *2 (N.D.Ill. March 31, 1994). In Shields, the plaintiff was terminated with eighty-seven weeks remaining in his three-year employment contract. The defendant employer argued that under the IWPCA, the plaintiff was not entitled to wages for the remainder of his contract because no services were actually rendered during that time period. The court, for the same reasons we find persuasive here, rejected this narrow interpretation of wages as inconsistent with the legislative intent of the IWPCA. Id.

In opposition, Ameritech cites Camillo v. Wal–Mart Stores, Inc., 221 Ill.App.3d 614, 164 Ill.Dec. 166, 582 N.E.2d 729 (5th Dist. 1991). In Camillo, the plaintiff sought a pro rata recovery of a management "earned bonus" pursuant to the IWPCA. Ameritech correctly asserts that the court in Camillo found that because services were rendered, the employee was entitled to the compensation of the bonus. Id., 221 Ill.App.3d at 623, 164 Ill.Dec. at 172, 582 N.E.2d at 735. However, nothing in Camillo supports Ameritech's argument that the only way in which compensation can become due under the IWPCA is for the employee to render services. Citing no other case law to support its narrow interpretation of the scope of the IWPCA, Ameritech's argument must be rejected. The motion to dismiss is denied as to Count IV.

### CONCLUSION

For the foregoing reasons, the defendants' motion to strike and dismiss is granted in part and denied in part. The motion to strike Anderson's request in Count II for damages in excess of $300,000 is granted. Count III is dismissed as to defendant Ameritech only. Count V is dismissed as to defendant ACHCP only. In the event that discovery demonstrates a proper basis to reinstate these defendants to Counts III and V, the plaintiff may seek leave of court to move for such reinstatement. The motion to dismiss is denied with respect to Count IV.