Lawrence W. BAHNAMAN, Richard Banks, Carrol G. Franco, Francis Olinger, Gerald C. Page, Wayne Pae, and Eugene R. Sessa, Plaintiffs,

v.

LUCENT TECHNOLOGIES, INC. and Lucent Technologies, Inc. Management Pension Plan, Defendants.

No. 00 C 8200.

United States District Court, N.D. Illinois, Eastern Division.

April 26, 2002.

Peter A. Silverman, Michael K. Desmond, Figliulo & Silverman, Chicago, IL, for plaintiffs.

Charles Clark Jackson, Sari M. Alamuddin, Deborah S. Davidson, Seyfarth Shaw, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Plaintiffs Lawrence Bahnaman, Richard Banks, Carrol Franco, Francis Olinger, Gerald Page, Wayne Pae, and Eugene Sessa are seven former employees of defendant Lucent Technologies, Inc. ("Lucent"), all of whom retired in 1997. Each plaintiff was a long-time employee of Lucent who had worked in management positions for a number of years. All had participated in defendant Lucent Technologies, Inc. Management Pension Plan ("LTMPP"), for which Lucent is the administrator. Prior to retirement, each plaintiff elected to participate in Lucent's Voluntary Termination Pay Offer ("VTP"), which provided a lump sum termination payment—ranging between $75,600 and $93,600 for plaintiffs—separate from any accrued retirement service pension benefits for which the retiree

may have qualified. In August 1997, Lucent announced the LTMPP would be amended effective January 1, 1998 (the "1998 Plan"). The amendment provided a Transition Formula ("TF") for calculating retirement benefits for those persons who retired during 1997 and were eligible for pension benefits under specified provisions of the prior plan (the "1996 Plan") as of the date employment terminated. Under the TF, each plaintiff would have received a larger monthly pension benefit—ranging between a $3,040 and $10,238 annual increase for plaintiffs—than under the 1996 Plan in effect when they actually retired. Each plaintiff applied for TF benefits and was denied such benefits. The LTMPP found that, by electing the VTP, plaintiffs were transferred to nonmanagement, occupational positions on their last day of employment and therefore were receiving monthly pension benefits under the Lucent Technologies Inc. Pension Plan ("LTPP"), not the LTMPP. TF benefits were denied on the ground that, as of the date of retirement, plaintiffs were not management employees participating in the LTMPP. After exhausting their administrative remedies, plaintiffs brought the present lawsuit claiming that TF benefits were denied in violation of the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Presently pending are the parties' cross motions for summary judgment.

The complaint contains two counts. Count I is denominated as a claim for denial of benefits. See 29 U.S.C. § 1132(a)(1)(B). Count II is denominated as a claim for breach of fiduciary duty. In response to defendants' motion for summary judgment, plaintiffs have voluntarily withdrawn Count II. Although not raised by Lucent, Lucent is not a proper defendant to the Count I claim. In this circuit, a claim for denial of benefits may only be brought against the benefit plan itself, not the administrator of the plan or an em-

ployer that establishes a plan. Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1490 (7th Cir.1996); Sisto v. SBC Ameritech, 2002 WL 448993 *2 (N.D.Ill. March 22, 2002); Hupp v. Experian Corp., 108 F.Supp.2d 1008, 1013 (N.D.Ill.2000); Fortmann v. Avon Products, Inc., 1999 WL 160258 *4 (N.D.Ill. March 9, 1999); Anderson v. Illinois Bell Telephone Co., 961 F.Supp. 1208, 1212–13 (N.D.Ill.1997). See also Gelardi v. Pertec Computer Corp., 761 F.2d 1323, 1324 (9th Cir.1985). But compare Everhart v. Allmerica Financial Life Insurance Co., 275 F.3d 751, 754 (9th Cir.2001) (noting split of authority among the circuits). Moreover, even if a claim for denial of benefits could also be brought against Lucent, the LTMPP's presence in the case is sufficient for plaintiffs to obtain all possible relief. See Fortmann, 1999 WL 160258 at *4. Lucent will be dismissed from this action and this opinion will henceforth refer to a single defendant, the LTMPP.

■ Plaintiffs contend that their eligibility for TF benefits is subject to de novo review. However, even if subject to deferential review, plaintiffs contend defendant's construction of the LTMPP and other pertinent documents was arbitrary and capricious. Plaintiffs contend they were not effectively transferred to occupational positions or the LTPP prior to retirement and remained eligible for benefits under the LTMPP. Alternatively, plaintiffs contend defendant did not provide an adequate hearing. Defendant contends it has discretionary authority to rule on all issues related to plaintiffs' qualification for TF benefits and therefore its decision is subject to arbitrary and capricious review only. Regardless of the standard of review, defendant contends its decision was fully consistent with the applicable documents. It also contends that plaintiffs waived certain arguments by failing to

raise them in the administrative proceedings and that it provided an adequate hearing. The underlying facts generally are not in dispute, only the legal effect of the underlying facts.

The Lucent Employee Benefit Committee ("EBC") makes benefit determinations for both the LTMPP and LTPP. Section 3.4 of the 1998 Plan provides:

> The Committee shall be the final review committee under the Plan, with the authority to determine conclusively for all parties any and all questions arising from the administration of the Plan, and shall have sole and complete discretionary authority and control to manage the operation and administration of the Plan, including but not limited to, the determination of all questions relating to eligibility for participation and benefits, interpretation of all Plan provisions, determination of the amount and kind of benefits payable to any Participant, Lawful Spouse or beneficiary, and construction of disputed or doubtful terms. Such decisions shall be conclusive and binding on all parties and not subject to further review.

The 1996 Plan that was in effect when plaintiffs retired had an essentially identical version, as does the LTPP.[1]

Plaintiffs contend that, in making a decision as to LTMPP benefits, this provision does not accord the EBC discretion in construing VTP, LTPP, or collective bargaining agreement provisions, nor the discretion to defer to Lucent classifications of employees. Section 3.4, however, is broadly written. It refers to *"complete discretionary authority"* not limited to the specifically listed subjects. Moreover, it expressly refers to "the determination of *all questions relating to* eligibility for participation and benefits." The issue raised in plaintiffs' complaint is their eligibility for participation and benefits. "[A]ll questions relating" thereto is broad authority without limit. *See Jannotta v. Subway Sandwich Shops, Inc.,* 225 F.3d 815, 818 (7th Cir.2000) ("relative to," as used in a lease, is a "broad phrase"). *See also Jannotta v. Subway Sandwich Shops, Inc.,* 1999 WL 184396 *2–3 (N.D.Ill. March 29, 1999), *aff'd, id.* (collecting cases broadly construing the term "relating to" and similar variations of the word "related"). Issues as to plaintiffs' job classifications and the effects of the VTP elections were "questions relating to eligibility for participation and benefits" for which the EBC had complete discretionary authority.

Because the EBC had discretion in making the determinations as to plaintiffs' eligibility for TF benefits, the denial of those benefits is subject to arbitrary and capricious review. *Hess v. Hartford Life & Accident Insurance Co.,* 274 F.3d 456, 461 (7th Cir.2001).

> This is, of course, a deferential standard of review. Under the arbitrary and capricious standard, a plan administrator's decision should not be overturned as long as (1) "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome," (2) the decision "is based on a reasonable explanation of relevant plan documents," or (3) the administrator "has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund,* 900 F.2d 1138, 1142–43 (7th Cir.1990) (citations omitted). Nevertheless, "[d]eferential review is not no review," and "deference need not be abject." *Gallo v.*

---

1. The only difference in those versions is capitalization of some terms and use of the term "spouse" instead of "Lawful Spouse."

*Amoco Corp.,* 102 F.3d 918, 922 (7th Cir.1996). In some cases, the plain language or structure of the plan or simple common sense will require the court to pronounce an administrator's determination arbitrary and capricious. *Id.*

*Id.*

■ Before bringing a lawsuit regarding the denial of benefits, a plan participant generally must first exhaust his or her administrative remedies. *Gallegos v. Mt. Sinai Medical Center,* 210 F.3d 803, 807–08 (7th Cir.), *cert. denied,* 531 U.S. 827, 121 S.Ct. 76, 148 L.Ed.2d 39 (2000); *Ames v. American National Can Co.,* 170 F.3d 751, 756–57 (7th Cir.1999). Claims may be waived if not first presented in administrative proceedings. *See Lindemann v. Mobil Oil Corp.,* 79 F.3d 647, 649 (7th Cir.1996); *Doyle v. Local 25, SEIU,* 1999 WL 1044206 *8 (N.D.Ill. Nov.9, 1999). However, a plan participant need only exhaust claims, not theories or issues. As long as he or she has presented the claim to the administrative reviewing body, the participant may raise any theory or issue as to the reviewing body's decision being arbitrary and capricious. *Taylor v. Continental Group Change in Control Severance Pay Plan,* 933 F.2d 1227, 1235–36 (3d Cir.1991); *Wolf v. National Shopmen Pension Fund,* 728 F.2d 182, 186 (3d Cir.1984); *Crimmins v. Arco Chemical Co.,* 1999 WL 199750 *6–7 (E.D.Pa. April 7, 1999). *See also Doyle,* 1999 WL 1044206 at *8 (final decision by plan setting forth its ground for denial of benefits was necessary before participant could formulate argument he raised in court). *Cf. Gallo v. Amoco Corp.,* 102 F.3d 918, 923 (7th Cir.1996), *cert. denied,* 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997) ("When challenged in court, the plan administrator can defend his interpretation with any arguments that bear upon its rationality. He cannot augment the administrative record with new facts bearing upon the application for benefits ... , but he is not limited to repeating what he told the applicant."). However, a theory or issue raised in court proceedings must be based on evidence or information that was before the reviewing body. *Hess,* 274 F.3d at 462; *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan,* 195 F.3d 975, 982 (7th Cir.1999).

Here, there is no dispute that each plaintiff exhausted his administrative remedies. Instead, defendant contends that some of the arguments presently raised are waived because not specifically raised before the EBC. There is no dispute that each plaintiff raised before the EBC that he or she was eligible for TF benefits. Each plaintiff repeats that claim in this court and there is no indication that any facts presently relied upon were not before the EBC. LTMPP, LTPP, and collective bargaining agreement provisions that may not have been specifically cited in plaintiffs' appeal letter before the EBC are not new facts that were not in the record before the EBC and may be cited here in direct response to the EBC's reasoning in denying benefits. It is not found that plaintiffs have waived any argument by failing to raise it before the EBC.

Occupational employees in the Business Communications Systems ("BCS") units of Lucent generally were supervised by Foremen. The Foremen reported to General Foremen. During the pertinent time period, Lucent and the International Brotherhood of Electrical Workers had a collective bargaining agreement (the "CBA") that covered certain BCS occupational employees. As part of the CBA, there was an agreement with Local 134 in the Chicago area regarding supervisors of certain specified BCS occupational employees, including supervisors of Customer Systems Engineers. This provision did not apply to employees in any other Local. Under the Local 134 agreement, persons promoted to Foreman and General Fore-

man had to have been members in good standing in Local 134 and remain so during their tenure in those positions. All the plaintiffs were in such supervisory or management positions.[2] The CBA's application to these managers, however, was limited to a few specific provisions of the CBA. The parties agree that being a member in good standing is not the same as being represented by Local 134 and they agree that none of the plaintiffs were represented by Local 134 while in their management positions.

Effective December 2, 1996, Lucent made the VTP offer available to Customer Systems Engineers where a formal surplus declaration had been made. Such a surplus was declared for Local 134 Customer Systems Engineers. Employees had until December 31, 1996 to elect the offer. As written, the offer was limited to those in the occupational position of Customer Systems Engineer. In the past, management employees had been permitted to return to occupational positions so that they could participate in incentive offers for voluntary termination. The parties do not dispute that Lucent and Local 134 agreed to extend the VTP to managers who were members of Local 134 and supervised Customer Systems Engineers. This additional agreement and offer apparently was oral and the parties do not provide the specific terms of the agreement.[3] There was no additional written VTP offer other than the initial announcement which is stated to be limited to Customer Systems Engineers.

Bahnaman, Banks, Page, Sessa, and Pae all testified at their depositions that they understood that, in order to participate in the VTP offer, they would be required to transfer to occupational positions before retiring. Although they state otherwise in their summary judgment affidavits, no genuine factual dispute is supported by an affidavit that, without sufficient explanation, contradicts prior deposition testimony. *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 532–33 (7th Cir.1999); *Patterson v. Chicago Association for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir.1998). As to Franco and Olinger, defendant points·to no testimony that they knew beforehand that they needed to be transferred to an occupation position in order to elect the VTP. As to these two plaintiffs, their uncontradicted affidavit testimony is accepted that they were not told in advance that their acceptance of the VTP offer was conditioned on their returning to an occupational position. On each of their VTP election forms, plaintiffs identified themselves as management employees.

Although Lucent's personnel department prepared employee change notices transferring each plaintiff to an occupational position on his or her last day of employment, these forms did not have to be signed by or provided to the employees. Also, none of the plaintiffs actually per-

2. Plaintiff Pae's job title was Staff Manager, but the same provision apparently applied to him as well.

3. The CBA provisions applicable to Local 134 management members include the following provision: "Management employees represented by Local 134 in the titles of Foreman and General Foreman may be declared surplus without regard to seniority. However, such employees, who were previously promoted to the title of Foreman or General Foreman from the title of Journeyman, may exercise the right to return to a Journeyman position and assume a seniority position as a Journeyman in the bargaining unit at the time the surplus is declared." This provision did not apply to plaintiffs electing the VTP offer because they were not represented by Local 134 and no surplus of Foremen or General Foremen was declared. Also, no plaintiff formally exercised his or her right to return to an occupational position.

formed occupational work on the last official day of work; each either continued to perform management functions or was on vacation that date. Additionally, prior to retirement, no employee was informed that electing the VTP or transferring to an occupational position would result in being switched from the LTMPP to the LTPP. Neither did any employee make any specific inquiry resulting in being expressly informed that there would be no effect. However, all the pension documents provided for plaintiffs to complete were for the LTMPP, not the LTPP, and each plaintiff received a preliminary pension benefits calculation for LTMPP benefits. Plaintiffs do not dispute that the LTMPP and its summary plan description were available for them to consider possibly pertinent provisions of the LTMPP. Four of the plaintiffs (Bahnaman, Banks, Page, and Franco) initially received monthly pension payments from the LTMPP. The administrator later decided that this was an error and the payments were redesignated as LTPP payments. The LTPP provided plaintiffs with full credit for their time under the LTMPP and incorporated LTMPP provisions in the benefits calculation applicable to plaintiffs. Prior to institution of the TF, the only difference between the two plans regarding plaintiffs' benefits calculations was a minuscule decrease resulting from one day of work (the last date of employment) being credited as LTPP time at the lower pay scale of an occupational employee instead of as LTMPP time at a manager's salary. *See* LTPP § 4.2(f).

For a service pension under the 1998 Plan, there is one eligibility provision for those who terminate employment on or after January 1, 1998 (1998 Plan § 4.1(a)(i)) and another for those who terminated employment before 1998 (*id.* § 4.1(a)(ii)). The latter provides: "Each *Participant* who Terminates Employment and [has reached an age and length of service requirement] shall be eligible to receive a service pension which shall be the greater of the Prior Plan Benefit or the benefit calculated under the provisions of Section 4.2(b) (transition benefit)." *Id.* (emphasis added).

The 1998 Plan also provides:

Notwithstanding anything to the contrary in this Section 4.2(b), the monthly pension benefit of each *Participant* who Terminates Employment on or after January 1, 1997 and before January 1, 1998 and is *eligible for a pension under the provisions of Section 4.1(a) or 4.1(c) of the Prior Plan on the date employment terminates* shall be recalculated as of the date of the Participant's Termination of Employment under the monthly benefit formula provided in Section 4.2(b)(ii)(B) of this Plan....

1998 Plan § 4.2(b)(iii) (emphasis added).

Section 2.29 of the 1998 Plan defines a Participant as "Any Employee who has attained age 21, whose Years of Service are one year or more and who is employed by a Participating Company." "Employee" is defined as:

Any individual ... who receives a regular and stated Compensation, other than a pension or retainer, from a Participating Company, and who is a Salaried Employee other than:

\* \* \* \* \* \*

(ii) a salaried graded employee, or,

\* \* \* \* \* \*

(iv) an employee who is an active participant in another Qualified Pension Plan, or

(v) an employee in a bargaining unit represented by a union, or....

1998 Plan § 2.11. The LTPP falls within the definition of Qualified Pension Plan. *See* 1998 Plan § 2.41.

Section 4.1(a) of the 1996 Plan provides:[4]

**4.1 Eligibility**

**(a) Service Plan**

Subject to the provisions set forth elsewhere in this Plan, each *Employee* who has reached [an age and length of service requirement] shall, if he or she leaves a Participating Company for any reason other than transfer to another Participating Company or transfer to, or immediate (i.e., on the next business day) employment or reemployment by, a company with which the Participating Companies have an Interchange Agreement if the provisions of such Interchange Agreement are applicable to such employee, be retired from active service and, upon such retirement, shall be granted a service pension, . . . .

1996 Plan § 4.1(a) (emphasis added).

The 1996 Plan's definitions of Employee and Qualified Pension Plan are identical to those in the 1998 Plan. *See* 1996 Plan §§ 2.11, 2.36. The 1996 Plan also provides: "All Employees who have reached age 21, and whose Years of Service have been one year or more, shall be participants in the Pension Plan, . . . ." *Id.* § 4.1(e).

Section 4.1(e) of the LTPP is titled "Pension Plan Participation" and provides: "All employees who have reached age 21, and whose Years of Service have been one year or more, shall be participants in the Pension Plan, provided that no former non-vested Employee shall be a participant in the Plan unless and until he or she is subsequently reemployed with rights to participate in the Plan."

The LTPP's definition of employee is:

Any individual . . . who receives a regular and stated compensation, other than a pension or retainer, from a Participating Company, and who is:

(i) an Employee in a bargaining unit represented by a union, or

(ii) a non-salaried Employee, or

\*　　\*　　\*　　\*　　\*　　\*

(iv) a salaried graded employee, or, . . . .

LTPP § 2.10.

■ The pertinent provisions of the 1998 Plan refer to a "participant who terminates employment." Part of the definition of being a participant is being an employee. Active participants in the LTPP are excluded from the definition of employee. When plaintiffs were transferred to occupational positions, they became active participants in the LTPP and thus were excluded from being participants in the LTMPP. Besides being a participant as defined by the 1998 Plan, to qualify for TF benefits, plaintiffs had to be eligible for a pension under § 4.1(a) of the 1996 Plan on the date employment was terminated. The 1996 Plan limited service pension eligibility to employees. Like the 1998 Plan, the 1996 Plan excluded active participants in the LTPP from the definition of employee. It was within the discretion of the EBC to construe the 1998 Plan and 1996 Plan terms as requiring that a person be a salaried employee on the date of retirement in order to qualify for benefits directly under either plan. It was also within the EBC's discretion to construe the LTPP as instead applying to persons who returned to non-salaried, bargaining unit positions on their last date of employment. The EBC did not act arbitrarily and capriciously by so construing the plans.

---

4. Section 4.1(c) of the 1996 Plan provides for a disability pension. No plaintiff retired to a disability pension.

Plaintiffs' contention that they were not covered by the LTPP because they were not actually represented by Local 134 is without merit. The EBC did not find that plaintiffs were covered by the LTPP while still management employees. The EBC found that they were covered by the LTPP after being transferred to the occupational positions. At that point, plaintiffs were in positions in which they were represented by Local 134.

Plaintiffs contend that they were not actually transferred to occupational positions because they did not agree to be so transferred. As to five of the plaintiffs, the evidence only supports that they understood that, by electing the VTP, they were agreeing to be transferred to an occupational position on their last date of employment so that they could qualify for the VTP. As to Franco and Olinger, there is no evidence that they were so informed. However, the VTP as written was limited to Customer Systems Engineers. There is no evidence showing that a written or oral agreement existed offering BCS managers a separate VTP package. The only VTP offer before the court is the written one for Customer Systems Engineers. Five of the plaintiffs understood they had to be transferred to occupational positions to accept the VTP, Lucent actually transferred all the plaintiffs to occupational positions, and Lucent management officials also testified that a transfer to an occupational position was necessary to accept the VTP. Therefore, the evidence only supports that transferring to an occupational position was a necessary condition for electing the VTP offer. Even as to Franco and Oling-

er, it must be found that their election of the VTP offer included an implicit agreement to be transferred to an occupational position. Even if it could not be considered to be by agreement, it is undisputed that Lucent did actually transfer each of the plaintiffs to an occupational position. That none of the plaintiffs actually performed occupational duties on their last dates of employment does not mean they were not reclassified as occupational employees. The EBC did not act arbitrarily or capriciously in accepting the employee change notices as showing plaintiffs had been transferred to occupational positions.[5]

Plaintiffs contend that, even accepting that they were transferred to occupational positions on their last date of employment, they remained eligible for LTMPP pension benefits on their date of retirement because any possible transfer to the LTPP would not have become effective until a later date. They rely on § 4.7(c) of the 1996 Plan[6] which provides:

If during any subsequent employment of an Employee in any Participating Company or any Interchange Company, the obligation with respect to the Employee's pension benefits has been transferred to the [LTPP] . . ., any eligibility for a pension hereunder shall cease. The obligation with respect to an Employee's pension benefits shall be transferred to such other plan on the earlier of (1) January 1 of the year following the year which includes the date as of which the Employee's prior service with any Participating Company or any Interchange Company is included (e.g., after

---

5. If plaintiffs did not believe they should have been reclassified, they could have requested (or possibly even grieved) that Lucent correct or rescind the employee change notices. There is no evidence that plaintiffs even made such an attempt, let alone that they succeeded in doing so. Moreover, had they successfully done so, they may have also had to withdraw

their election of VTP and return the termination payments they received.

6. Actually, plaintiffs cite § 4.6(c) of the 1998 Plan, which is an identical provision. However, the pertinent plan for this argument would be the 1996 Plan that was in effect as of plaintiffs' termination dates.

bridging of such prior service) in the Employee's Term of Employment for purposes of computation of pension under such other plan, or (2) the last day of the first month following the month in which the Employee dies or retires, if such death or retirement occurs after the date as of which the Employee's service with a Participating Company is included in the Employee's Term of Employment for purposes of computation of pension under such other plan.

Defendant contends that this provision is inapplicable to employees such as plaintiffs who transferred directly from a management position covered by the LTMPP to an occupational position covered by the LTPP. Defendant contends that the provision's application is limited to employees who retire from a management position and are later rehired in an occupational position. Defendant points to supporting deposition testimony of a manager in Lucent's pension policy and administration organization. That construction of § 4.7(c) is consistent with its context and content. The other subsections of § 4.7 concern employees who retire and then are rehired. Moreover, § 4.7(c) itself refers to "eligibility" for a pension ceasing upon transfer to the LTPP. Under the terms of the LTMPP, eligibility for a pension cannot exist prior to when an employee first terminates employment. *See* 1996 Plan § 4.1(a). Section 4.7(c) does not concern plaintiffs' situation of directly transferring to a different position. The EBC was not arbitrary and capricious for failing to discuss or consider § 4.7(c)'s application to plaintiff's situation.

■ Plaintiffs also contend that they cannot be considered to have been transferred to the LTPP on their last date of employment because they did not knowingly do so. They contend that they could not give up any rights under the LTMPP without knowingly waiving or relinquishing such rights. It is undisputed that plaintiffs were never informed in advance and were completely unaware that their last-day transfers to occupational positions would transfer their pension benefits from the LTMPP to the LTPP. To the contrary, every indication they were given was that, upon retirement, they would receive pension benefits under the LTMPP. Plaintiffs, however, cite no ERISA provision or case law requiring that they knowingly waive their continued participation in the LTMPP. The LTMPP defines who is eligible for service pension benefits. If an employee takes action that disqualifies him or her from receiving such benefits, the employee is not eligible for benefits regardless of whether the employee knew of the effect on pension benefits.[7] To hold otherwise would mean that any employee who leaves a position covered by a pension plan, whether because of a voluntary transfer, a voluntary resignation, or an involuntary termination, transfer, or demotion, would still be entitled to benefits under that plan unless the employee was actually aware of possible effects on his or her pension benefits. Moreover, excepting plaintiffs from the terms of the LTMPP would go against the rule that modifications to the terms of an ERISA plan must be in writing and in accordance with the plan's provisions for amendments. *See*

7. The cases cited by plaintiffs are inapposite. Those cases concern written waivers (settlements or releases) giving up benefits that the employee was (or arguably was) eligible for. *See Morais v. Central Beverage Corp. Union Employees' Supplemental Retirement Plan,* 167 F.3d 709 (1st Cir.1999); *Carrabba v.*

*Randalls Food Markets, Inc.,* 145 F.Supp.2d 763, 771–72 (N.D.Tex.2000), *aff'd,* 252 F.3d 721 (5th Cir.), *cert. denied,* — U.S. ——, 122 S.Ct. 463, 151 L.Ed.2d 380 (2001). *See also Lynn v. CSX Transportation, Inc.,* 84 F.3d 970, 975–77 (7th Cir.1996).

*Downs v. World Color Press,* 214 F.3d 802, 805 (7th Cir.2000). Plaintiffs do not point to a sufficient legal basis for ignoring the eligibility requirements that they did not satisfy.[8]

Last, plaintiffs contend[9] that the EBC did not provide them with a full and fair review as required by 29 U.S.C. § 1133(2), which provides: "In accordance with regulations of the Secretary, every employee benefit plan shall afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."

As to full and fair review, regulations provide:

... [T]he claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures—

(i) Provide claimants at least 60 days following receipt of a notification of an adverse benefit determination within which to appeal the determination;

(ii) Provide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits;

(iii) Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section;

(iv) Provide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

29 C.F.R. § 2560.503–1(h)(2).

As to the review committee's decision, regulations provide:

The plan administrator shall provide a claimant with written or electronic notification of a plan's determination on review.... In the case of an adverse benefit determination, the notification shall set forth, in a manner calculated to be understood by the claimant—

(1) The specific reason or reasons for the adverse determination;

(2) Reference to the specific plan provisions on which the benefit determination is based;

(3) A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and

---

**8.** Even if plaintiffs' contention regarding the need for a knowing relinquishment of LTMPP coverage had merit, it would not necessarily mean they were entitled to TF benefits. At the time plaintiffs elected the VTP, the difference between monthly pension benefits under the LTMPP and LTPP was miniscule. There is nothing to indicate plaintiffs would have declined the VTP had they known that accepting it would transfer their pension benefits to the LTPP. Even if it were held that plaintiffs should now be given the opportunity to reconsider their election in light of knowing the actual consequences, they should not be given the opportunity to both keep the VTP and receive TF benefits. Instead, they would have to choose between (a) returning to the LTMPP and thus foregoing (that is returning) the VTP amounts already paid while being entitled to TF monthly benefits or (b) remaining in the LTPP and thus being able to retain the VTP amounts already paid, but not qualifying for TF benefits.

**9.** Defendant argues this contention is waived because not alleged in the complaint. Since this contention otherwise lacks merit, it is unnecessary to determine if it is waived or if plaintiffs would be entitled to amend their complaint.

other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section;

(4) A statement describing any voluntary appeal procedures offered by the plan and the claimant's right to obtain the information about such procedures described in paragraph (c)(3)(iv) of this section, and a statement of the claimant's right to bring an action under section 502(a) of the Act; . . . .

*Id.* § 2560.503–1(j).

Plaintiffs contend the review proceedings were deficient because (a) the same person who drafted the initial decision drafted the letters informing plaintiffs their appeals had been denied; (b) plaintiffs were not interviewed or called to testify; and (c) there is no indication the EBC considered certain evidence, that is the evidence that they never performed the functions of occupational employees and were initially paid benefits from the LTMPP.

■ A full and fair review does not necessitate that live testimony be taken. *Brown v. Retirement Committee of Briggs & Stratton Retirement Plan,* 797 F.2d 521, 534 (7th Cir.1986), *cert. denied,* 479 U.S. 1094, 107 S.Ct. 1311, 94 L.Ed.2d 165 (1987); *Dabertin v. HCR Manor Care, Inc.,* 177 F.Supp.2d 829, 848 (N.D.Ill. 2001). *See also* 29 C.F.R. § 2560.503–1(h)(2)(ii). There is no contention by plaintiffs that they were precluded from presenting adequate written submissions. Also, the provision for a two-step decisionmaking process does not require that different persons make the decision at each step. *Brown,* 797 F.2d at 534. Moreover, the actual decisionmakers at each step were different. The person that plaintiffs complain participated at both steps was someone who drafted memoranda to the

decisionmakers and reported the decisions to plaintiffs. She was not the actual decisionmaker.

■ The Seventh Circuit has stated that:

The persistent core requirements of review intended to be full and fair include knowing what evidence the decisionmaker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision.

*Brown,* 797 F.2d at 534 (quoting *Grossmuller v. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America Local 813,* 715 F.2d 853, 858 n. 5 (3d Cir.1983)). More recently, the Seventh Circuit has clarified that the review committee needs to provide "specific reasons" for its decision, "but that is not the same thing as the reasoning behind the reasons, in this case the interpretive process that generated the reason for the denial." *Gallo,* 102 F.3d at 922.

■ The minutes of the EBC meeting, as well as the letters sent to plaintiffs informing them of the EBC's decisions, state that the EBC "based its decision on a full review of the facts of the case, including all information provided, as well as the provisions of the LTPP and the LTMPP." The minutes do not specifically refer to plaintiffs initially being paid by the LTMPP, their continued performance of management duties, or their being processed as LTMPP participants. As discussed above, the key fact is that plaintiffs were reclassified as occupational employees. The failure to explicitly refer to the additional facts in the decision or minutes is not a significant omission. In any event, plaintiffs also provide the memorandum that staff submitted to the EBC. *See* Pl.

Exh. 19. That memorandum shows that the facts cited by plaintiff were specifically recited to the EBC even if they had not directly read plaintiffs' submissions. The record does not support that the EBC failed to adequately consider any material fact.

For the foregoing reasons, the undisputed facts show that the denial of TF's benefits was not arbitrary or capricious. Defendants' motion for summary judgment will be granted and plaintiffs' motion for summary judgment will be denied.

IT IS THEREFORE ORDERED that plaintiffs' motion for summary judgment [16–1] is denied. Defendants' motion for summary judgment [13–1] is granted. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiffs dismissing plaintiffs' causes of action with prejudice.